Teresa M. GRAHAM, Appellant,

v.

SPECIAL SCHOOL DISTRICT NO. 1,
et al., Respondents.

No. C8–90–1009.

Court of Appeals of Minnesota.

Oct. 30, 1990.

Review Granted Jan. 8, 1991.

James V. Roth, Leonard, Street and Deinard, Minneapolis, for appellant.

Donald M. Lewis, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondents.

Considered and decided by HUSPENI, P.J., and FORSBERG and SHORT, JJ.

## OPINION

FORSBERG, Judge.

Appellant Teresa M. Graham brought this action against respondents Special School District No. 1 (School District) and Keith Kromer, the Director of Special Education for the School District. The first amended complaint alleges defamation, retaliatory discharge in violation of Minn. Stat. § 181.932, subd. 1(a), and violation of 42 U.S.C. § 1983.

After granting the School District's and Kromer's motion to amend their answer to include defenses of collateral estoppel and res judicata, the trial court determined the remaining issues in this litigation had already been fully and fairly decided in a prior proceeding before a hearing examiner resulting in Graham's termination. Graham appeals the grant of summary judgment and dismissal with prejudice of her complaint.

## FACTS

Graham worked for the School District since 1978 as a social worker. She began working at the Ramsey Pre-School Special Education Program (Ramsey) in 1987. The program at Ramsey is designed for preschool children with special needs.

In the fall of 1987, Graham wrote several internal memoranda to various staff and officials, including Kromer and Janet Proehl, the director at Ramsey. These memoranda discussed her concerns regarding perceived violations of state procedures for the assessment of children.

At about the same time, Proehl began to receive complaints from other staff members regarding Graham's behavior. Those complaints involved Graham's interactions with other staff members, slamming doors shut during assessment of children and classes, and interrupting classes. During this time, Graham also exhibited inappropriate conduct toward Proehl which included violating Proehl's direct orders; physically pushing Proehl on one occasion to gain access to a classroom; calling Proehl a liar; threatening and yelling at Proehl; and attempting to give Proehl orders.

On March 9, 1988, a meeting was held to discuss Graham's behavior. Several Ramsey staff members had been asked to keep notes on their interactions with Graham. At that meeting or shortly thereafter, it was determined Graham would be suspended immediately.

Kromer prepared a memorandum dated March 11, 1988, stating Graham's behavior made it "extremely difficult" for her to serve her students and was "potentially dangerous." Kromer further stated Graham had interrupted class, screamed in the

presence of students, and verbally abused other staff members. Kromer recommended that "for the safety of students and staff" Graham be suspended "pending a full investigation of her work behavior and the concerns expressed by [Ramsey] employees."

Meanwhile, Graham filed a complaint with the Minnesota Department of Education claiming violations of assessment and reporting procedures by Ramsey. The School District did not become aware of the complaint until April 1988, more than one month after Graham was suspended. In April 1989, the Department of Education issued its final findings indicating the School District was in compliance on certain issues, but not on others.

Shortly after her suspension, Graham brought this action against the School District and Kromer alleging defamation, retaliatory discharge, and violation of section 1983. The first count of her first amended complaint alleged Kromer's March 11 memorandum contained defamatory statements. The second count alleged Graham's communications with appropriate officials concerning possible violations of state laws "upset individuals within" the School District. It further alleged the School District "disciplined, terminated, threatened and otherwise discriminated against and penalized [her] because of her good faith actions in reporting violations or suspected violations of state laws." The third count alleged the School District and Kromer "disciplined and punished [Graham] for her exercise of free speech" in violation of section 1983.

In late September 1988, Graham received a letter from the School District's attorney informing her of the School District's decision to commence a proceeding to terminate her employment. A hearing on Graham's termination was held before an independent hearing examiner. Testimony was submitted over a nine-day period.

The hearing examiner thereafter issued her "Summary of Proceedings, Conclusions, and Recommendation to the Board of Education." Her conclusions state as follows:

The record, taken as a whole, establishes by substantial and competent evidence that:

1. Ms. Graham has repeatedly demonstrated conduct unbecoming a social worker;

2. Ms. Graham has repeatedly engaged in acts of insubordination;

3. Ms. Graham's disruptive behavior and failure to participate as an effective team member while at Ramsey Pre-School have tended to cause gross inefficiency in the delivery of social work and the management of the school;

4. Ms. Graham has failed to correct her conduct despite reasonable oral and written requests that she do so; and

5. The record fails to show, by substantial and competent evidence, that this action is motivated by the School District's desire to retaliate against Ms. Graham for any act protected by statute.

The hearing examiner therefore recommended Graham be discharged. The school board adopted this recommendation, and voted to terminate Graham on February 10, 1989.

Graham appealed the board's determination to this court. In *Graham v. Special School Dist. No. 1*, C6–89–533, 1989 WL 94450 (Minn.App. Aug. 22, 1989), *pet. for rev. denied* (Minn. Oct. 19, 1989) ("*Graham I*"), this court concluded substantial evidence supported the grounds for termination. This court also rejected Graham's claims that her termination violated her right to free speech, and that she was discharged in retaliation for filing the complaint with the Department of Education.

Meanwhile, discovery proceeded in this case. In November 1989, the School District and Kromer filed a motion to amend its answer to include the defenses of res judicata and collateral estoppel. They also filed a separate motion for summary judgment. This appeal is from the trial court's grant of both motions, and dismissal of Graham's complaint with prejudice.

### ISSUES

1. Did the trial court abuse its discretion in allowing the School District and Kromer to amend their answer?

2. Did the trial court err in granting summary judgment?

## ANALYSIS

### I.

■ Graham argues the trial court abused its discretion in allowing the School District and Kromer to amend their answer to assert the defenses of res judicata and collateral estoppel just prior to moving for summary judgment. Res judicata and collateral estoppel are affirmative defenses which may properly be raised for the first time in a motion for summary judgment in instances where those defenses were unavailable at the time of the original answer. *Kendall v. Avon Prods., Inc.*, 711 F.Supp. 1178, 1179 n. 2 (S.D.N.Y.1989).

■ Graham next argues it is "both inexcusable and inexplicable" that the motion to amend was not made until 9½ months after she was terminated and over 3 months after this court upheld that termination. A trial court has wide discretion in granting amendments to pleadings. Minn. R.Civ.P. 15.01 ("leave shall be freely given when justice so requires"). Amendments to pleadings should be liberally permitted, unless the party opposing the amendment can establish prejudice. *Envall v. Indep. School Dist. No. 704*, 399 N.W.2d 593, 597 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987). Graham has made no showing of prejudice. She was familiar with the termination proceedings, the hearing examiner's findings, and the subsequent appeal. Moreover, Graham had adequate time to oppose the motion for summary judgment.

Graham finally argues the trial court ignored rule 1.05 of the Special Rules of Practice, Fourth Judicial District. The motion to amend was not served and filed until after the period of nonreadiness had expired. Nevertheless, amendment was properly allowed under rule 1.05 "by order of the assigned judge," who did so after noting that the amendment served the interests of justice.

### II.

*Waiver*

■ Graham argues the School District and Kromer waived the right to assert the defenses of res judicata and collateral estoppel by repeatedly taking the position in the termination proceeding that the hearing examiner could not and should not consider facts or issues relating to this civil lawsuit. In support of her waiver claim, Graham submitted selected portions of the transcript of the termination hearing.

A reading of those selected portions, however, fails to establish either an express or implied waiver on the part of the School District and Kromer. They merely indicate there was some discussion of whether the issues pending before the Department of Education were collateral to Graham's termination proceeding. Those issues related to the School District's compliance with state regulations. While the hearing examiner expressed some reservation about the relevance of the merits of Graham's complaint with the Department of Education, she nevertheless permitted some inquiry on those issues. Contrary to Graham's assertion that she was limited in her presentation of evidence, the hearing examiner accorded Graham wide latitude in her attempt to prove her termination was sought for other than permissible reasons.

### Res judicata and collateral estoppel

Under the related doctrines of res judicata and collateral estoppel, a " 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction * * * cannot be disputed in a subsequent suit between the same parties.' " *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). Res judicata or "claim preclusion" bars a second suit for the same claim, while collateral estoppel or "issue preclusion" bars a subsequent suit based on a different cause of action but involving the same issue. *Kaiser*, 353 N.W.2d at 902.

Collateral estoppel may be appropriate when

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Willems v. Commissioner of Pub. Safety,* 333 N.W.2d 619, 621 (Minn.1983) (quoting *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn.1979)).

■ 1. Graham argues the trial court erred in giving preclusive effect to an administrative decision in subsequent employment litigation. In terminating a teacher's employment, a school board acts as a quasi-judicial body. *See Morey v. School Bd. of Indep. School Dist. No. 492,* 271 Minn. 445, 448–49, 136 N.W.2d 105, 107–08 (1965). While finding its use inappropriate in particular cases due to lack of one of the four factors or public policy considerations, Minnesota courts have recognized that the policy purposes of res judicata apply to administrative decisions where the agency acts in a judicial or quasi-judicial capacity. *See, e.g., In re Application for the Discipline of Morris,* 408 N.W.2d 859, 862 (Minn.1987); *AFSCME Council 96 v. Arrowhead Regional Corrections Bd.,* 356 N.W.2d 295, 298 (Minn.1984); *McKee v. County of Ramsey,* 310 Minn. 192, 194 n. 1, 245 N.W.2d 460, 462 n. 1 (1976). Preclusive effect has been given to a prior arbitration decision. *Aufderhar v. Data Dispatch, Inc.,* 452 N.W.2d 648, 652 (Minn. 1990) (when amount of damages has been previously determined in arbitration proceeding, insured may be collaterally estopped from relitigating issue in subsequent personal injury action).

In a recent unpublished opinion, this court affirmed application of the doctrine of res judicata to a prior teacher termination proceeding. *Brundin v. Indep. School Dist. No. 112,* No. C6–89–1469, 1990 WL 1728 (Minn.App. Jan. 16, 1990), *pet. for rev. denied* (Minn. Mar. 16, 1990) (*"Brundin II"*). While *Brundin II* is not precedential, it warrants discussion because its facts are substantially similar to those presented here.

Brundin was terminated by the school board after receiving six notices of deficiency in her teaching performance. This court upheld the hearing examiner's findings and conclusions, and the supreme court denied Brundin's petition for further review. *See Brundin v. Indep. School Dist. No. 112,* C0–87–1964 1988 WL 15896 (Minn.App. Mar. 1, 1988), *pet. for rev. denied* (Minn. Apr. 28, 1988) (*"Brundin I"*).

Brundin then sued the school district alleging it violated PELRA and her first and fourteenth amendment rights by terminating her in retaliation for filing grievances. In affirming the trial court's grant of summary judgment to the school district on res judicata grounds, this court concluded Brundin "was given a full and fair opportunity to litigate her case in her pre-termination hearing and subsequent appeal to this court. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 483–4 [102 S.Ct. 1883, 1898, 72 L.Ed.2d 262] (1982)." This court further concluded:

First, [in its review of Brundin's termination,] this court found * * * that Brundin's termination was not arbitrary and capricious. This court addressed the reasons for Brundin's termination and found they were proper under Minn.Stat. § 125.12, subd. 6. Brundin cannot now allege she was terminated for the improper reason of filing grievances against the district. All of the evidence concerning Brundin's termination, including the grievances, was before this court when it found her termination to be proper.

Secondly, when this court held that the school district did not act arbitrarily and capriciously, it decided the essential elements of Brundin's section 1983 claims of first and fourteenth amendment violations. *See Gahr v. Trammel,* 796 F.2d 1063 (8th Cir.1986).

Third, this court [in its review of Brundin's termination] specifically held that Brundin was not denied due process in the pre-termination hearing. She is not allowed to argue this issue a second time.

*Brundin II* illustrates a growing trend toward giving res judicata effect to quasi-judicial decisions in an appropriate case. We believe this is such a case.

■ 2. Graham argues the requisite identity of issues is lacking because the issues raised in this civil lawsuit are not within the statutory jurisdiction of the hearing examiner. She insists that a hearing examiner appointed by the School District does not have jurisdiction to hear defamation, retaliatory discharge, or free speech claims. *See McKee v. County of Ramsey*, 310 Minn. 192, 194–5, 245 N.W.2d 460, 462 (1976) (decision of commissioner of public welfare denying reimbursement of maternity expenses not res judicata on subsequent litigation raising constitutional and negligence claims not raised before the agency and over which the agency had no jurisdiction). Unlike *McKee*, however, Graham's claims of retaliatory discharge and first amendment violations were raised and addressed in the termination proceeding.

Graham's claim of retaliatory discharge was raised by Graham herself, directly addressed, and rejected by both the hearing examiner and this court. The hearing examiner concluded there was insufficient evidence supporting her allegation the School District sought her termination in retaliation for filing a complaint with the Department of Education. This court also rejected her claim of retaliatory discharge, noting the record contains numerous permissible reasons for her discharge.

Graham's first amendment claim was characterized as a violation of section 1983. While this claim was never considered by the hearing examiner, Graham specifically raised it as an issue on appeal in *Graham I*. In rejecting her argument that her termination violated her right of free speech, this court concluded it was not the expression of her views that led to her dismissal, but rather the "time, place, and manner" in which those views were delivered. This court further concluded her statements took place in private and were delivered in a threatening and accusatory manner at inappropriate times.

■ Unlike her claims of retaliatory discharge and violation of section 1983, Graham's defamation claim was not directly raised or addressed in the termination proceeding. In determining whether two claims are the same, a court examines whether the same evidence will support both judgments. *Melady–Briggs Cattle Corp. v. Drovers State Bank*, 213 Minn. 304, 309, 6 N.W.2d 454, 457 (1942).

Essential to a claim of defamation is that the challenged statements are false. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). In recommending Graham be discharged, the hearing examiner necessarily confirmed the truth of Kromer's statements. The evidence Graham offers to support her defamation claim is the same evidence she relied upon during her termination hearing.

■ Even if there is no identity of issues with respect to Graham's defamation claim, summary judgment was appropriately granted because she fails to offer evidence to support actual malice, an essential element of her claim. *See Stuempges*, 297 N.W.2d at 256–57 (absent a showing of actual malice, employer's comments on employee's performance and misconduct are privileged).

Kromer's statement that Graham's behavior is potentially "dangerous" is not exaggerated language sufficient to support a finding of actual malice in this case. The conduct of the School District and Kromer following Graham's suspension do not suggest actual malice. Nor is there any evidence suggesting Proehl or anyone else had a personal motive to retaliate against Graham. Finally, Graham's deposition statements regarding her beliefs as to Kromer's motives are speculative. They are insufficient to refute evidence that Kromer's statements were made in good faith reliance on information gathered at the meeting held two days earlier with Graham's co-workers.

3. Graham argues she did not have a full and fair opportunity to litigate these issues in the prior termination proceeding. "A party receives a fair opportunity to present the claims allegedly precluded if

the party could have brought the claims in a proceeding that would satisfy the minimal procedural requirements of the due process clause." *Gahr v. Trammel*, 796 F.2d 1063, 1070 (8th Cir.1986) (citing *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897).

In *Clapper v. Budget Oil Co.*, 437 N.W.2d 722, 726 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989), this court refused to give collateral estoppel effect to a prior determination by the Department of Jobs and Training. In so doing, this court determined the employee had not been afforded a full and fair opportunity to litigate in the administrative proceeding.

The brief unemployment compensation proceeding involved in *Clapper*, however, is not analogous to the lengthy adversarial hearing, subject to review by this court, provided Graham. Graham was afforded a number of rights under the Teacher Tenure Act. Those rights included the right to have a written record of the hearing, to have witnesses subpoenaed and examined under oath, to be represented by counsel, to examine and cross-examine witnesses, and to present arguments. Minn.Stat. § 125.17, subds. 5 and 6 (1988).

In addition, the hearing examiner in this case specifically found:

> 6. The conduct of the hearing was fair to both parties, and each had the opportunity to present evidence as desired. Throughout the hearing, Ms. Graham actively assisted her counsel. She brought voluminous documentation in files with her each day, and often retrieved specific documents from them for her counsel. She and her counsel conferred at least once during the examination of each witness, after which her counsel often pursued new topics of questioning. Thus, Ms. Graham was able to and did in fact participate and assist in her defense to the fullest extent she desired and certainly to the extent necessary to satisfy due process.

Under these circumstances, Graham had a full and fair opportunity to raise and litigate her claims.

■ 4. Graham argues preclusive effect should not be given to her prior termination decision because the information gathered in that proceeding is private under Minn.Stat. § 125.17, subd. 7 (1988). This statute, however, does not make any information gathered private. The statute speaks only to the confidentiality of the hearing itself: "All *hearings* before the school board shall be private or may be public at the decision of the teacher against whom such charges have been filed." Minn.Stat. § 125.17, subd. 7 (1988) (emphasis added). At Graham's request, the termination hearing in this case was conducted in private. Nonetheless, we do not believe the statute mandates that information gathered in a termination proceeding should be limited to the administrative sphere, particularly where the teacher instituted a civil suit against the school district which raised the same issues already addressed in the prior termination proceeding.

*Fraud and misconduct*

■ Graham argues preclusive effect cannot be given to the prior termination proceeding because it is marred by fraud and misconduct. *See Halloran v. Blue & White Liberty Cab Co.*, 253 Minn. 436, 442, 92 N.W.2d 794, 798 (1958). Her claims of fraud or misconduct have no basis in the record. The parties' dispute over the disclosure of a psychiatric report cannot be characterized as a fraud upon the court, but as a good faith dispute which has since been resolved by the trial court. In addition, questions regarding the credibility of certain witnesses fail to suggest fraud or misconduct sufficient to warrant relief from a judgment. *See Regents of the Univ. of Minn. v. Medical, Inc.*, 405 N.W.2d 474, 480–81 (Minn.App.1987) (lost opportunities for impeachment involving collateral issues not material to the court's ultimate decision, do not warrant relief from the operation of a judgment), *pet. for rev. denied* (Minn. July 15, 1987). Finally, the number, timing, and description of the communications between the hearing examiner and the School District's attorney suggest discussion of administrative matters and fail to infer an improper attempt to

influence the outcome of the termination hearing.

## DECISION

The grant of summary judgment to the School District and Kromer is affirmed.

Affirmed.

HUSPENI, J., dissents.

HUSPENI, Judge (dissenting).

I respectfully dissent and would reverse the award of summary judgment. I conclude that the doctrines of res judicata and collateral estoppel were inappropriately invoked and improperly relied upon in this case.

Many of the concerns expressed by this court in *Clapper v. Budget Oil Company,* 437 N.W.2d 722, 726 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989) are present here. The *Clapper* court, in reversing the trial court's application of the doctrine of collateral estoppel, noted among other concerns that, in administrative hearings, common law or statutory rules of evidence need not be followed, that hearsay is admissible, and that a jury trial is not available. *Id.*

The hearing officer in this case recognized the first two *Clapper* concerns. An even more persuasive argument is raised, I believe, regarding the lack of availability of a jury trial in administrative hearings. Appellant has raised issues in this proceeding which she is entitled to put before a jury.

A further concern, and a most important one, I submit, is the repeated objection of respondents to admission in the termination proceedings of any evidence relating to appellant's defamation or retaliatory discharge claims. I conclude from that posture that respondents waived their rights to invoke the doctrines upon which summary judgment was granted. Respondents' objections to admission of evidence in the termination proceedings were made on the grounds that such evidence was to be considered in other pending proceedings.[1] To now permit respondents to utilize the scant evidence admitted over their objection to support their summary judgment motion is to permit them to use as a sword that which should only be used as a shield.

With reference to the majority's analysis of *Brundin v. Indep. School Dist. No. 112,* No. C6–89–1469 (Minn.App. Jan. 16, 1990), *pet. for rev. denied* (Minn. Mar. 16, 1990), I agree that case is not precedential. Even if it were, however, it is also distinguishable. The appellant in *Brundin* did not hesitate to raise all issues during the termination proceedings. Only after she failed to prevail on any issue in those proceedings or upon appeal did she commence a civil action and raise there the very same issues upon which she had been defeated. Here, appellant commenced a civil proceeding prior to the termination hearing; all parties were not only aware of that civil proceeding but referred to it at various points during the termination proceeding when objections to evidence were raised and argued.[2] The waiver by respondents of the right to invoke res judicata and collateral estoppel which I discern here was notably absent in *Brundin.*

A final observation: equitable remedies should not be rigidly applied. *Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608, 613 (Minn.1988). While trial courts have not only the right but the duty to avoid protracted and repetitious litigation, they must also conscientiously ensure that litigants receive a full and fair opportunity to be heard on the issues properly raised and preserved in litigation. I do not believe appellant was afforded that opportunity in this case.

---

**1.** Appellant raises troubling allegations about the minimal discovery available to her during the termination proceedings. Respondents' hesitancy to engage in full discovery in that termination proceeding would be consistent with their position that certain issues were to be addressed elsewhere.

**2.** Reference by this court in *Graham I* to issues other than those properly considered in the termination proceeding constitutes dicta and does not persuade me that those issues were properly before our court.