Teresa M. GRAHAM, Petitioner,
Appellant,

v.

**SPECIAL SCHOOL DISTRICT
NO. 1, et al., Respondents.**

No. C8–90–1009.

Supreme Court of Minnesota.

July 12, 1991.

James V. Roth, Leonard, Street & Deinard, Minneapolis, for appellant.

Donald M. Lewis, Popham, Haik, Schnobrich & Kaufman, Minneapolis, for respondents.

SIMONETT, Justice.

This case asks whether certain factual determinations made in a teacher termination proceeding may, by reason of collateral estoppel, preclude the teacher from relitigating those issues in a subsequent lawsuit.

On March 11, 1988, Teresa Graham, a social worker at the Ramsey Preschool Center, was suspended with pay pending an investigation of her "work behavior." Two weeks later Graham started a lawsuit against the school district alleging defamation and retaliatory discrimination. Later that year, in the fall, the district commenced termination proceedings. A 9–day hearing was held before a hearing examiner. The examiner concluded that grounds for Graham's termination had been established by substantial and competent evidence and recommended Graham's discharge.

The school board accepted the examiner's report and recommendation and discharged Graham in February 1989. Graham then amended her pending tort action to add a claim for deprivation of her First Amendment free speech rights. She also appealed the school board's decision. The court of appeals, in an unpublished opinion dated August 16, 1989, affirmed the termination, and this court denied further review.

The school district then moved to amend its answer in plaintiff's tort action to allege collateral estoppel and for summary judgment. The trial court allowed the amendment and granted summary judgment to the school district. Summary judgment was granted on the sole grounds that collateral estoppel precluded plaintiff from relitigating certain factual issues essential to her causes of action which had been decided adversely to her in the school termination proceedings. The court of appeals affirmed the trial court. *Graham v. Special School Dist. No. 1,* 462 N.W.2d 78 (Minn.App.1990). We granted Graham's petition for further review.

The main issue in this appeal is whether the doctrine of collateral estoppel should apply to issues adjudicated in a school board proceeding to terminate a teacher so as to defeat plaintiff's tort claims for defamation, retaliatory discharge and deprivation of rights of free speech.

We have said that res judicata may apply to administrative decisions when an agency acts in a judicial or quasi-judicial

capacity. *McKee v. County of Ramsey,* 310 Minn. 192, 194, 245 N.W.2d 460, 462 n. 1 (1976). That being so, we believe that the companion doctrine of collateral estoppel (issue preclusion) may also apply, in appropriate instances, to agency decisions. For collateral estoppel to apply,

1) the issue to be precluded must be identical to the issue raised in the prior agency adjudication, *Ellis v. Minneapolis Comm'n of Civil Rts.,* 319 N.W.2d 702, 704 (Minn.1982);

2) the issue must have been necessary to the agency adjudication and properly before the agency, *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966);

3) the agency determination must be a final adjudication subject to judicial review, *Utah Construction, supra; Ellis, supra;*

4) the estopped party was a party or in privity with a party to the prior agency determination, *Ellis, supra;* and

5) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue, *Ellis, supra.*

■ In a teacher termination proceeding, the school board acts in a quasi-judicial capacity. *See Morey v. School Bd. of Ind. Sch. Dist. No. 492,* 271 Minn. 445, 448–49, 136 N.W.2d 105, 107–08 (1965). The decision is subject to judicial review; indeed, in this case the school board decision was reviewed and affirmed by the court of appeals.

Consequently, this appeal centers on whether the issues sought to be precluded from relitigation are identical to those in the tort action, whether they were properly before the school board, and whether Graham received a full and fair hearing on the issues in the teacher termination proceeding.

### I.

■ First of all, we conclude that certain factual issues which will arise in the court actions for defamation, retaliatory discharge, and free speech violations also arose and were decided in the teacher termination proceeding.

Termination proceedings focus on whether there are statutory grounds for discharge.[1] Here Graham was charged with inefficiency in teaching, insubordination, and conduct unbecoming a teacher, Minn. Stat. § 125.17, subd. 4(1) & (3) (1990), all as more particularly set out in a 12–page bill of particulars describing the incidents of misbehavior. The hearing examiner made 52 findings of fact relating to these incidents and concluded that inefficiency in teaching, insubordination, and conduct unbecoming a teacher had been proven.

Plaintiff Graham's complaint alleges she was defamed by statements made in a March 11, 1988, memo prepared and circulated by Keith Kromer, the Director of Special Education.[2] Her complaint asserts that "[t]he accusations forming the basis of Plaintiff's suspension from employment are false * * *."

---

**1.** The defendant school district lies within a city of the first class, so the termination proceedings were brought pursuant to Minn.Stat. § 125.17 (1990). For other school districts in the state, termination proceedings are governed by Minn. Stat. § 125.12. Under either statute, the proceeding is conducted in essentially the same manner.

**2.** The Kromer memo states in part:

The behaviors that she [Graham] is exhibiting at her work site make it extremely difficult to deliver appropriate services to preschool children and potentially dangerous for students and staff.

The memo states there were incidents where Graham interrupted classes and was abusive to staff; where Graham had screamed in the presence of the children; where, when confronted, she would misrepresent the situation; and where Graham would intimidate staff by calling or threatening to call their supervisors. "[F]or the safety of students and staff," the memo concludes, "it is critical that Teresa Graham be removed * * *."

The hearing examiner found that such incidents had occurred. While there was no specific finding that Graham's conduct had placed the children in any immediate physical danger, the conclusion necessarily established that Graham's misconduct was potentially harmful to the safety and well-being of the small preschool children and that Graham's abusive behavior caused concern and anxiety to her teaching colleagues.

We have no difficulty concluding that the factual issues of misconduct dealt with in the termination proceeding and decided adversely to the teacher are the same factual issues on which plaintiff bases her defamation action, namely, Graham's fitness to teach. As to the defamation count, the school district has satisfied the "identical issues" requirement for collateral estoppel.

In the termination proceedings Graham contended that her proposed discharge was in retaliation for her reporting possible violations in school programs to the State Department of Education. While the hearing examiner found that some of Graham's complaints made to the Department of Education had been substantiated, she also found that the termination proceedings were not retaliatory. We conclude, therefore, that the factual issue of retaliation raised in the termination proceeding is the same as the retaliation issue Graham proposes to litigate in her court action for retaliatory discharge.

Graham's third cause of action is a claim under 42 U.S.C. § 1983 for denial of her constitutional right of free speech. Presumably Graham claims that she was discharged because she exercised her right of free speech to complain to the State Department of Education about the school's programs not being in compliance with governmental regulations.[3] The hearing examiner did not rule on this free speech claim because Graham was not making the claim at the time of the hearing. It is evident, however, that the factual basis for the free speech violation is the same as for the retaliatory discharge claim.

### II.

We next must decide whether the factual issues common to both the school board termination proceedings and the court action were properly before the factfinder in the termination proceeding. To put it another way, did the factfinder have jurisdiction to decide the issues for which collateral estoppel effect is now claimed?

Graham argues that the school board does not have jurisdiction to decide causes of action for defamation, retaliatory discharge, and free speech denial. True enough, but nobody is making such a claim. The school district is not asking for a res judicata bar; it is asking only for collateral estoppel, *i.e.*, for preclusion of certain factual issues which are common to both the termination proceeding and the tort actions.

The school district claims the defamation action must be dismissed because the statements alleged to be defamatory were found to be true in the teacher termination proceeding. Clearly, these issues relating to the teacher's conduct were properly before the hearing examiner.

The issue of retaliatory discharge is more of a problem. At the termination hearing, Graham announced she was raising the affirmative defense of retaliatory discharge, relying apparently on Minn.Stat. § 181.932, subd. 1(a) (1990), which prohibits discharging an employee in retaliation for "whistle-blowing." The hearing transcript reveals that the parties were never quite comfortable with this issue. The school board's attorney both conceded and denied that the retaliatory discharge defense was properly before the hearing examiner for resolution; in any event, contrary to Graham's contention made to us, the hearing examiner did entertain the defense, overruled the school board's objections, allowed Graham to present her defense fully, and decided the issue of retaliation against her.[4]

---

**3.** Plaintiff's complaint does not specify what speech she has in mind for her free speech violation. Is it the complaints she voiced to her colleagues and superiors at work which were, in part at least, found by the examiner to be rude, abusive, and intimidating? This is what the court of appeals panel thought in dismissing the free speech count. *Graham v. Special School Dist. No. 1*, 462 N.W.2d 78, 83 (Minn.App.1990).

Or does Graham mean, as we assume, her complaint made to the Department of Education?

**4.** In attempting to show she did not receive a full and fair hearing, Graham indulges in a misleading characterization of the record. Two examples will suffice. The school board's attorney objected to Graham's cross-examination of the school board's first witness about Graham's complaints to the Department of Education.

Because the retaliation defense relates to the school district's own conduct and not the teacher's, it can be argued, we suppose, that retaliation is not an issue properly before the hearing examiner, at least not completely. Nevertheless, it seems to us the factual issues related to retaliation are so intertwined with the statutory grounds for discharge that the factfinder must deal with them, even though the primary purpose of the proceeding is to determine if statutory grounds for discharge exist.

## III.

This brings us to the requirement of a "full and fair" hearing. Here, in accordance with established procedures, the hearing was presided over by an impartial hearing examiner, a former trial judge. Both parties were entitled to representation and were represented by counsel. Subpoenas were available. A record was made. The rules of evidence were followed and findings had to be (and were) established by "substantial and competent evidence." Minn.Stat. § 125.12, subd. 9 (1990). The hearing took 9 days. Graham complains of a lack of discovery (even though she was taking depositions in her tort action then pending), but she has failed to show she suffered from any lack of discovery. Her claim that she was denied an opportunity to present her case is without merit.[5]

■ Graham reminds us that if collateral estoppel applies, plaintiff loses her right to a jury trial in the tort action. This is an important factor, of course, to be weighed.

If, however, the nonjury, statutory termination proceeding produces findings which are entitled to judicial recognition and finality, the constitutional right to a jury trial is not violated. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 335, 99 S.Ct. 645, 653, 58 L.Ed.2d 552 (1979).

The one serious concern to the judicial legitimacy of findings in a teacher termination proceeding is, we think, that the school board occupies the rather incongruous tripartite role of "prosecutor, judge, and jury." *See, e.g., Kroll v. Ind. Sch. Dist. No. 593,* 304 N.W.2d 338, 345 (Minn. 1981) (and cases therein cited). Because of this incongruity, this court has required that the school board distance itself from the factfinding function by appointing an impartial hearing examiner. *Id.* To assure further the independence of the hearing examiner, we require that the examiner make detailed findings, based on a record, all of which are subject to judicial review. *Dokmo v. Ind. Sch. Dist. No. 11,* 459 N.W.2d 671 (Minn.1990). When the school board adopts the findings of the hearing examiner it makes those findings its own, but the fact remains that the findings are, in the first instance, those of the impartial hearing examiner and the product of an adversarial, adjudicative hearing.

In this situation, we think the teacher termination proceeding does afford a full and fair hearing on the fact issues of the teacher's conduct for which collateral estoppel is sought in the teacher's defamation

---

The school board's attorney agreed, in answer to a question from the hearing examiner, that retaliatory discharge was a proper defense but added, "[I]f there were an improper motive mixed in with that proper basis, that would be for an entirely separate action and not for you to determine, Madam Examiner." Graham's counsel did not agree with the statement and neither did the hearing examiner. Instead, the examiner overruled the school board's objection and permitted Graham to inquire "about the report to the state, when she knew about it, if she knows how it was handled afterwards." Hearing Transcript, Vol. I, pp. 55–57.

Later, Graham called as her witness Joel Wiener, a complaint specialist with the Department of Education, to give evidence on "our defense of retaliation." The school board's at-

torney objected, stating retaliation was "a matter of a separate lawsuit." The hearing examiner overruled the objection, received exhibits, and allowed the witness to testify fully. Hearing Transcript, Vol. VII, pp. 27–41.

5. Graham insisted on her right to present her defense of retaliatory discharge; the hearing examiner allowed her to do so and, ultimately, found the defense had not been established. *See* footnote 4, *supra.* Apparently because she is dissatisfied with the examiner's ultimate decision, Graham now argues it was unfair to let her proceed to do what she wanted to do. Even more curious, Graham argues that the school board should be held to have "waived" its right to collateral estoppel on retaliation because the school board's objections to the admission of evidence on that issue had been overruled.

action. Considerations of judicial economy are also involved. A statutory teacher termination proceeding is the only method available to a school district to remove a teacher. If the school board believes there are grounds for terminating a teacher, it has no alternative but to initiate the statutory proceeding. If the grounds for discharge proven in the proceeding could be relitigated in a defamation action where it is once again argued that the grounds for discharge are false, the teacher termination proceeding becomes an invitation to a defamation action and a chilling deterrent to the termination proceeding itself. The mandated proceeding would be a discovery stage for the tort litigation to follow. With the elaborate procedural and due process safeguards built into the teacher termination proceedings, we see no reason why the findings of teacher misconduct should not be binding for at least some causes of action. Nor are we persuaded that the fact the hearing examiner is selected and paid for by the school district should, standing alone, deprive the examiner's findings on the teacher's conduct of collateral estoppel effect.[6] (If the examiner's findings exonerate the teacher, this, too, may have preclusive effect in the subsequent defamation action, but in that action the question of qualified immunity would, of course, remain.)

We hold that plaintiff's defamation action must be dismissed on the merits because, by reason of collateral estoppel, the alleged defamatory statements were established to be true in the teacher's termination proceeding.

We do not believe, however, that the findings should be given collateral estoppel effect for plaintiff's retaliatory discharge and free speech claims. In this situation, the school board is being asked to judge not just the conduct of the employee it is proposing to discharge, but the lawfulness of the district's own conduct as the employer. It is being asked to judge whether it has, itself, engaged in unlawful discrimination against the employee. The termination proceeding, it must be remembered, is to decide if there is to be a discharge; there is no discharge until the school board acts on the hearing examiner's report. At this final stage of the proceedings, even where the examiner has found that grounds for discharge exist, the board may have to judge a "mixed motive" situation, a matter on which the school board cannot realistically distance itself by accepting the hearing examiner's findings, as it can findings on teacher misconduct only.[7]

The school board's decision suffices, of course, for the purposes of the termination proceeding, *i.e.*, the teacher may be deemed duly discharged, if that is the board's decision. But when retaliatory discharge is an affirmative defense, the school board's decision to discharge becomes manifestly self-serving; in these circumstances, collateral estoppel should not apply to preclude relitigation of the issues before the court

---

**6.** Graham says the hearing examiner had ex parte contact with the school board attorney. It appears, however, the contact was only for scheduling purposes. We see nothing sinister in this. *Cf.* Minn.Reg. 1400.7700 (the administrative law judge may not have any ex parte contact with a party on "any issue of fact or law," but may respond to questions relating solely to hearing procedures). There is no suggestion that the examiner in any way was not impartial.

**7.** The three-step *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ] test must be used in analyzing a retaliatory discharge claim. *Phipps v. Clark Oil & Refining Corp.,* 408 N.W.2d 569, 572 (Minn. 1987). The plaintiff employee must make out a prima facie case of discriminatory treatment. The employer must then articulate legitimate reasons for the discharge. Next, the factfinder

must determine whether the employer's reasons are pretextual or not. Even in the case of mixed motives on the part of the employer, the factfinder must determine whether retaliation was a "discernible, discriminatory, and causative factor" in the discharge. *Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 626–27 (Minn.1988).

There must be findings on these steps. *Sigurdson v. Isanti County,* 386 N.W.2d 715, 721 (Minn.1986) ("trial court, in making its findings of fact and conclusions of law, must explicitly apply the three-step *McDonnell Douglas* analysis."). Neither the hearing examiner nor the school board in the termination proceedings conducted such an analysis, nor, in this action, has the trial court. The same is true of the free speech claim.

on the retaliatory discharge and free speech causes of action. It must remain for the trial court, in the tort action, to reconsider all the evidence bearing on both the conduct of the teacher and the school district and how the two interrelate or do not.

Collateral estoppel is "a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom the estoppel is urged." *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613–14 (Minn.1988). We think a sensible and fair application of collateral estoppel is to apply it to defamation but not to the retaliatory discharge and free speech claims.

Regardless of collateral estoppel, argues the school district, the record establishes as a matter of law that plaintiff is not entitled to recover on any of her claims. The remaining retaliatory discharge and the free speech claims appear to present a host of questions, such as matters of immunity and the balancing of competing interests, not to mention a *McDonnell Douglas* analysis. *See* footnote 7, *supra.* The trial court did not reach these questions nor are they fully briefed to us; consequently, under the particular circumstances of this case, we decline to rule on other possible aspects of defendant's summary judgment motion and remand these matters to the trial court. We add only that we find no merit to plaintiff's further claim that the trial judge abused his discretion in permitting the school district to amend its answer to allege collateral estoppel.

Affirmed in part, reversed in part, and remanded.