**STATE of Minnesota by FRIENDS OF the RIVERFRONT, et al.,**
**Appellants,**

**v.**

**CITY OF MINNEAPOLIS,**
**et al., Respondents,**

**Minneapolis Park and Recreation Board, Respondent,**

**DeLaSalle High School, Respondent.**

**No. A07–0925.**

Court of Appeals of Minnesota.

June 24, 2008.

Jack Y. Perry, Matthew J. Franken, Briggs and Morgan, P.A., Minneapolis, MN, for appellants.

Susan L. Segal, Minneapolis City Attorney, James A. Moore, Stephen H. Norton, Assistant City Attorneys, Minneapolis, MN, for respondent City of Minneapolis, et al.

Brian F. Rice, Ann E. Walther, Rice, Michels & Walther, LLP, Minneapolis, MN, for respondent Minneapolis Park and Recreation Board.

Carolyn V. Wolski, Leonard, Street and Deinard, Minneapolis, MN, for respondent DeLaSalle High School.

Considered and decided by LANSING, Presiding Judge; TOUSSAINT, Chief Judge; and HUDSON, Judge.

## OPINION

LANSING, Judge.

As part of a challenge to a proposed athletic facility on Nicollet Island, the plaintiffs brought a lawsuit asserting a Minnesota Environmental Rights Act claim, a contract claim, and a declaratory-judgment claim. The district court dismissed the suit. On appeal, the plaintiffs challenge the decision to dismiss each of these claims. We conclude that the MERA claim was precluded by a previous administrative determination, that the contract claim was not ripe, and that the remaining declaratory-judgment claim fails as a matter of law. Accordingly, we affirm.

## FACTS

This appeal stems from litigation over DeLaSalle High School and the Minneapolis Park and Recreation Board's plan to build an athletic facility next to the high school's campus on Nicollet Island. The city's historic-preservation committee initially denied a certificate of appropriateness for the project, but the city council reversed the decision on appeal. In the city-council proceedings, the Friends of the Riverfront, one of the plaintiffs in this case, intervened and argued that the proposed athletic facility would be in violation of the Minnesota Environmental Rights Act (MERA). On certiorari appeal, this

court affirmed the city council's decision to grant the certificate of appropriateness. *Friends of the Riverfront v. DeLaSalle High School,* No. A06–2222, 2007 WL 4110617 (Minn.App. Nov. 20, 2007), *review denied* (Minn. Jan. 29, 2008).

After the city council made its decision—but before this court heard the appeal—the Friends of the Riverfront, the Grove Street Flats Association, and Sidney and Lola Berg brought a suit in district court challenging the proposed athletic facility. They claimed that construction of the facility would violate MERA and the terms of the Bergs' lease of land on Nicollet Island. In addition, they claimed that they were entitled to a declaratory judgment that the city-council president had a conflict of interest and should be disqualified from making further rulings on the proposed athletic facility. The district court dismissed the suit, primarily on the basis that the issues had already been decided in the city-council proceeding. The plaintiffs then appealed.

## ISSUES

I. Under the collateral-estoppel doctrine, does the city council's MERA determination preclude an independent MERA lawsuit?

II. Are the contract claims ripe for adjudication?

III. Did the plaintiffs' action for a declaratory judgment against the city-council president set forth a legally sufficient claim for relief?

## ANALYSIS

In their motion to dismiss, defendants presented arguments on a number of issues best raised in a summary-judgment motion. When a motion to dismiss presents matters outside the pleading, the district court can, as it did in this case, treat the motion as a motion for summary judgment. Minn. R. Civ. P. 12.02. On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *Yang v. Voyagaire Houseboats, Inc.,* 701 N.W.2d 783, 788 (Minn.2005). In assessing the evidence, we take the view most favorable to the party against whom judgment was granted. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.,* 666 N.W.2d 320, 323 n. 1 (Minn.2003).

## I

■ The decisive issue in this case is whether collateral estoppel precludes an independent Minnesota Environmental Rights Act (MERA) claim. Collateral estoppel is a common-law doctrine that precludes the relitigation of previously determined issues. *State v. Lemmer,* 736 N.W.2d 650, 658 (Minn.2007). The application of the doctrine involves a mixed question of fact and law, which we review de novo. *Id.* at 659. We do not apply the doctrine rigidly, and our focus is on whether the application would work an injustice. *Hauschildt v. Beckingham,* 686 N.W.2d 829, 837 (Minn.2004).

■ Collateral estoppel can be applied based on administrative hearings when—as in this case—the administrative body acted in a quasi-judicial capacity. *Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 115–16 (Minn.1991). Collateral estoppel precludes relitigation if (1) the issues are identical, (2) the issue was necessary to the administrative agency's decision, (3) the decision was a final determination subject to judicial review, (4) the estopped party was a party or in privity with a party to the prior determination, and (5) the estopped party was given "a full and fair opportunity to be heard on the adjudicated issue." *Id.* at 116.

The plaintiffs argue that two of these requirements are not satisfied. First, they argue that they did not receive a full and fair opportunity to be heard in the city-council hearing. Second, Sidney and Lola Berg and the Grove Street Flats Association argue that they were not in privity with a party to the city council's determination. We reject these arguments.

### Full and Fair Opportunity

In determining whether a party was given a full and fair opportunity to be heard, Minnesota courts focus on two factors. First, we ask whether the administrative hearing provided sufficient procedural safeguards. *State v. Joseph*, 636 N.W.2d 322, 328 (Minn.2001). Second, we ask whether the tribunal or administrative agency was impermissibly biased. *See Graham*, 472 N.W.2d at 119 (concluding that collateral estoppel did not apply when school district was determining legality of its own conduct).

To determine whether the administrative hearing provided sufficient procedural safeguards to permit application of the collateral-estoppel doctrine, we must first identify the procedural safeguards that are necessary. Previous Minnesota cases are consistent with the Restatement (Second) of Judgments, which requires the right "to present evidence and legal argument" and "other procedural elements as may be necessary[,] . . . having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions." Restatement (Second) of Judgments § 83(2) (1980) (discussing collateral estoppel and administrative decisions).

In *Graham*, the supreme court held that the procedures used were sufficient to permit collateral estoppel when the hearing was presided over by an impartial hearing examiner, subpoenas were available, rules of evidence were followed, and the hearing took nine days. 472 N.W.2d at 118. But *Graham* does not indicate that these procedures are required in every case or that the rules of civil procedure must be strictly followed. *Id.* In *Zander v. State*, this court applied collateral estoppel to a MERA claim even though there was no hearing. 703 N.W.2d 845, 854–55 (Minn. App.2005). We held that it was sufficient that the estopped party had an opportunity to present written argument, provide written evidence, and obtain appellate review. *Id.* The consistency of these cases with the restatement approach leads us to conclude that the restatement framework provides useful guidance to determine what procedural safeguards are necessary.

Drawing on the restatement's guidance, together with Minnesota precedent, we conclude that the city-council hearing, which is subject to judicial review, provided adequate procedural safeguards. The plaintiffs were able to present written argument and evidence. Thus, as the restatement requires, the plaintiffs had an opportunity "to present evidence and legal argument." Restatement (Second) of Judgments § 83(2). The plaintiffs protest that they could not make oral arguments or present live testimony to the city council. But the purpose of the hearing was to determine whether the development was historically appropriate. In light of the type of evidence that would best address the "magnitude and complexity of the matter," a full evidentiary hearing was not required. *Id.* Because of the nature of the issue, the city council did not need to carefully evaluate the credibility of the witnesses. Written argument was sufficient to permit the city council to evaluate the appropriateness of the development. The plaintiffs have not identified any evidence that they were unable to present.

Similarly, in light of the hearing's subject matter, there was no need to use an independent hearing examiner. Unlike in *Graham*, there was no requirement that a hearing examiner be used in this case. *See Graham*, 472 N.W.2d at 118 (discussing use of hearing examiners in teacher-termination proceedings). Because written argument was adequate, a hearing examiner was not necessary to develop the factual record.

Although the plaintiffs were limited to written evidence and arguments, they were not prejudiced by this limitation. And we see no basis for concluding that they were entitled to an independent hearing examiner. We therefore conclude that the hearing provided adequate procedural safeguards.

We also conclude that the tribunal—in this case, the city council—was not impermissibly biased. In *Graham*, the supreme court held that the procedures used were adequate, but that one of the school board's decisions should not be given preclusive effect because it was "manifestly self-serving." 472 N.W.2d at 119. The concern was that "the school board occupies the rather incongruous tripartite role of prosecutor, judge, and jury." *Id.* at 118 (quotation omitted). In the school board's discharge proceeding, retaliatory discharge was an affirmative defense. *Id.* at 119. In a subsequent retaliatory-discharge suit, the school board's conclusion on the retaliatory-discharge issue was not preclusive because the school board was judging "whether it has, itself, engaged in unlawful discrimination against the employee." *Id.*

But applying collateral estoppel in this case would not permit the city council to determine the legality of its own conduct. The city council's decision is different from the school board's decision in *Graham*. The city council's MERA decision was primarily about whether DeLaSalle High School's conduct was legal, not whether its *own conduct* was legal. We recognize that the city council's decision was also about whether the Minneapolis Park and Recreation Board's conduct was legal. But the board is independent of the city council. Although the board is a department of the Minneapolis city *government*, its members are elected independently, and the board can enact its own ordinances. City of Minneapolis, Minn., City Charter, ch. 16, § 1 (2008). Because of this independence and the fact that the city council's decision primarily benefited DeLaSalle, we cannot conclude that the decision was manifestly self-serving or that the tribunal was impermissibly biased.

The plaintiffs argue that the city council was biased because the city-council president was on DeLaSalle's board of trustees. But this fact would not establish that the tribunal itself was impermissibly biased because the hearing procedures provided adequate protection against conflicts of interest. Minnesota law disqualifies public officials from participating in decisions when they have a direct interest in the outcome. *Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 15, 153 N.W.2d 209, 219 (1967) (listing factors to be considered). If a disqualified official participates, a party can challenge the decision directly. *See E.T.O., Inc. v. Town of Marion*, 375 N.W.2d 815, 819 (Minn.1985) (considering *Lenz* factors in mandamus proceeding challenging license denial). On certiorari appeal, if it is determined that additional evidence is necessary, the case can be transferred to district court. *See Hard Times Cafe, Inc. v. City of Minneapolis*, 625 N.W.2d 165, 173–74 (Minn.App.2001) (transferring case to district court to consider ex parte contacts and irregular procedures). Because of the possibility of appeal, the hearings provided adequate protection against conflicts of interest. The plaintiffs could have raised the alleged

conflicts of interest—as well as their other procedural arguments—on direct appeal. In light of this protection, the tribunal as a whole was not impermissibly biased.

The record establishes that the hearing provided adequate procedural safeguards and that the tribunal was not impermissibly biased. We therefore conclude, as a matter of law, that the city-council hearing provided a full and fair opportunity to be heard.

*Privity*

■■ "There is no prevailing definition of privity which can be automatically applied, . . . so we must carefully examine the circumstance of each case." *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 278, 200 N.W.2d 45, 47 (1972). It is not enough that the parties had similar interests or that the other party provided adequate representation. *Pirrotta v. Indep. Sch. Dist. No. 347*, 396 N.W.2d 20, 22 (Minn.1986). But a party was in privity with a party to the prior litigation if the party "(1) had a controlling participation in the first action, (2) had an active self-interest in the previous litigation, . . . or (3) had a right to appeal from a prior judgment." *Lemmer*, 736 N.W.2d at 661 (citation omitted). "The basic requirement is that the estopped party's interests have been sufficiently represented in the first action so that the application of collateral estoppel is not inequitable." *Brunsoman v. Seltz*, 414 N.W.2d 547, 550 (Minn.App.1987), *review denied* (Minn. Jan. 15, 1988).

Under the circumstances in this case, the district court could properly conclude that the Bergs and the Grove Street Flats Association were in privity with the Friends of the Riverfront in the city council proceeding. First, the Bergs and the Grove Street Flats Association participated in the certiorari appeal. Second, based on the record, the Bergs, the Grove Street Flats Association, and the Friends of the

Riverfront had an indistinguishable—not merely similar—interest in the city-council proceeding. Because of this participation and interest, the parties can be equitably barred from bringing a subsequent MERA claim and relitigating the issues raised in the city-council proceeding.

The Bergs and the Grove Street Flats Association argue that fact issues exist on whether their interests are identical. If there were a reason to believe that the Bergs' and the Grove Street Flats Association's interests were in conflict with those of the Friends of the Riverfront, remand would be appropriate. *See Miller v. Nw. Nat'l Ins. Co.*, 354 N.W.2d 58, 62 (Minn. App.1984) (remanding for privity determination when evidence of conflict was present). But at oral argument, counsel for the plaintiffs was unable to explain what fact issues might exist. Thus, because no facts are in dispute, the district court could properly rule on the privity issue without holding an evidentiary hearing.

The record establishes as a matter of law that the city-council hearing provided a full and fair opportunity to be heard and that the parties were in privity. The plaintiffs do not dispute that the other elements of collateral estoppel were satisfied. Therefore, the district court correctly concluded that collateral estoppel barred the plaintiffs MERA claim.

**II**

■■■ The ripeness doctrine is based on the general principle that Minnesota courts will consider only redressable injuries. *See State ex rel. Sviggum v. Hanson*, 732 N.W.2d 312, 321 (Minn.App.2007) (discussing general requirement of redressable injury). The doctrine bars suits brought before a redressable injury exists. We review justiciability issues de novo. *Schiff v. Griffin*, 639 N.W.2d 56, 59 (Minn. App.2002).

The district court dismissed, without prejudice, the Bergs' contract claims on ripeness grounds. The Bergs have leased land from the city. Under the terms of the lease, the city is required to comply with several restrictive covenants. The Bergs claim that permitting the athletic facility would violate the restrictive covenants, and the city's actions therefore violate the contract. The district court's conclusion on the contract claims was correct for two reasons.

First, the Bergs cannot yet show that the city has actually breached the lease. The Bergs do not argue that merely planning the athletic facility violates the restrictive covenant. With respect to the contract claim, the relevant conduct is the actual construction of the athletic facility, not the course of conduct leading up to its construction. Because there is no basis for concluding that the contract has already been breached, the plaintiffs are not yet able to maintain a breach-of-contract claim based on actual breach.

Second, the Bergs cannot show that the city has committed an anticipatory breach of the lease. "An anticipatory breach by repudiation occurs where a vendor cannot possibly perform and where by its conduct it demonstrates an unequivocal intent not to perform." *Space Ctr., Inc. v. 451 Corp.*, 298 N.W.2d 443, 445 (Minn.1980). It is "an unconditional repudiation of a contract, either by words or acts, which is communicated to the other party prior to the time fixed by the contract for his performance." *In re Haugen*, 278 N.W.2d 75, 79 n. 6 (Minn.1979). In this case, the claimed breach would occur only if the further approvals are obtained. Therefore, the city has not made an *unconditional* repudiation, and it is still possible for the city to perform. As a result, the Bergs cannot establish an anticipatory breach. Thus, the district court correctly concluded that the Bergs' contract claim was not ripe.

## III

■ The plaintiffs also sought a declaratory judgment disqualifying the city-council president from participating in future proceedings involving the athletic facility. The district court dismissed the claim based on the fact that the city-council president was not alleged to have a direct pecuniary interest in the DeLaSalle project. This conclusion was consistent with Minnesota caselaw. In previous cases, Minnesota courts have disqualified officials from participating in a decision only when they had a pecuniary interest. *See Lenz*, 278 Minn. at 15, 153 N.W.2d at 219–20 (considering nature of *pecuniary* interest); *Nolan v. City of Eden Prairie*, 610 N.W.2d 697, 700 (Minn.App.2000) (concluding that disqualification unnecessary when official "had no obvious pecuniary interest and he is not involved in any contractual way"), *review denied* (Minn. July 25, 2000).

■ Even if we assume an official should be disqualified based on fiduciary duties; the declaratory-judgment action was still properly dismissed. Declaratory judgments cannot be granted based on remote contingencies. *Sviggum*, 732 N.W.2d at 322 (citing *Seiz v. Citizens Pure Ice Co.*, 207 Minn. 277, 283, 290 N.W. 802, 805 (1940)). The city-council president's prior conduct should have been dealt with on appeal. In future cases—if it turns out that the city-council president should be disqualified—then a declaratory judgment is necessary only if the city-council president does not disqualify herself or is not removed. Thus, because a declaratory judgment would be based on the remote contingency that a public official would act improperly, the district court properly dismissed the plaintiffs' claim.

Finally, we note that the parties have addressed a number of other arguments. In their briefs, the parties dispute (1) whether MERA permits an independent

lawsuit after the plaintiffs intervened in the city-council proceeding, (2) the ripeness of the MERA claim, (3) whether the plaintiffs preserved their arguments for appeal, and (4) whether the plaintiffs are entitled to an injunction and attorneys' fees. Because we conclude that the plaintiffs' claims were properly dismissed, we need not resolve the other MERA issues and the waiver issues. Furthermore, because the plaintiffs' claims were properly dismissed, they were not entitled to attorneys' fees under MERA.

## DECISION

Because the MERA claim was barred by the collateral-estoppel doctrine, the contract claim was not ripe, and the declaratory-judgment action against the city-council president was legally insufficient, the district court properly dismissed the plaintiffs' claims.

**Affirmed.**