**In the Matter of the Proposed Discharge of Donald Lee SHELTON.**

**No. C1–87–208.**

Court of Appeals of Minnesota.

June 23, 1987.

Review Denied Aug. 12, 1987.

Eric R. Miller, Ann M. Curme, Oppenheimer Wolff & Donnelly, St. Paul, for relator.

John S. Beckmann, Kermit Hoversten, Fred W. Wellmann, Hoversten, Strom, Johnson & Rysavy, Austin, for respondent.

Considered and decided by POPOVICH, C.J., and STONE,* and MULALLY *, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal by writ of certiorari challenges respondent school district's immediate discharge of relator pursuant to Minn. Stat. § 125.12, subd. 8 (1986). Relator claims the decision by the school board should be reversed because the board (1) failed to reasonably base its order on substantial evidence, and (2) erred by misapplying Minn.Stat. § 364.03 (1986). We affirm.

## FACTS

Relator Donald L. Shelton and his co-teachers Charles Wead and Donald Narveson formed the Let–3 Corporation in March 1979 to sell computer software and service computer hardware. Relator was the corporation's secretary and treasurer and the sole signatory for all corporate bank accounts. He bore the responsibility for all tax matters.

The three individuals began their relationship as teachers at Blooming Prairie High School. Relator taught social studies for grades 7–12 since 1966 and was the boys' golf coach for 20 years. Wead and Narveson are also long-term teachers at the high school.

On July 1, 1985, Wead and Narveson confronted relator with a bank statement and cancelled checks that revealed relator's unauthorized withdrawal of corporate funds. Relator admitted the theft that began in March 1983. He also forged the others' signatures on personal guarantees to the bank. On July 3, 1985, he returned his shares of stock to the corporation and agreed to pay restitution. Relator has since paid $40,173 restitution on the unauthorized checks and unpaid taxes, and purchased for $8150 a car that was owned by the corporation, by receiving $40,000 from his parents and $12,000 from a bank. Wead and Narveson reported relator's theft to the sheriff's department in September 1985.

Relator returned to teach the 1985–86 school year. He instructed two sections of seventh grade social studies involving political geography and three sections of twelfth grade social studies comprised of courses in psychology, consumer economics and American government. Relator's theft became common knowledge in Blooming Prairie by November 1985. John Nefstead, school superintendent, was informed in September and Darwin Bostic, high school principal, was told in November.

In late January 1986, relator took a seven-week medical leave of absence for hernia surgery. During that time, Rebecca Walsh served as a substitute teacher. She had difficulty controlling her classes. After Bostic visited the classes, explained relator's absence and asked for cooperation, behavior improved. Upon relator's return, the disorder in his classroom abated. Overall, the senior class was unusually disruptive during the school year.

During the 1985–86 school year, considerable disagreement occurred among staff members regarding relator's return to teaching. Those most vocal were opposed to his return. That group consisted of Wead and his close friends Frank Vorlicek and Renae Felchle. By the end of the year, tension was quite high and the staff no longer operated as a cohesive group. Several teachers testified they would likely leave the district if relator is reinstated.

In March, relator was charged with theft by swindle pursuant to Minn.Stat. § 609.52, subds. 2(4), 3(2) (1986). On May 30, he pleaded guilty to one count of theft as full prosecution for his offenses.

* Acting as judges of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

On June 17, the Blooming Prairie school board passed a resolution to discharge relator, a continuing contract teacher, pursuant to Minn.Stat. § 125.12, subd. 8 (1986), citing his theft as immoral conduct and conduct unbecoming a teacher. Relator's prior teaching record was unblemished.

In August, the trial court sentenced relator to a 90-day misdemeanor sentence and ordered him to complete his restitution to the corporation by May 1, 1987 by paying $2571.73. The court stayed 60 days of relator's sentence and placed him on one-year probation.

Relator's discharge hearing was held in October 1986. The hearing examiner released her recommendation on December 1, 1986. She concluded:

> That no evidence exists to suggest that the teacher is not fully remediated or that there is a likelihood that he will commit a similar crime in the future.

> \* \* \* \* \* \*

> That the teacher has shown sufficient rehabilitation and present fitness to teach in accord with Minn.Stat. § 364.03, subd. 3, to preclude his termination from employment with the School District.

The examiner recommended the proposed discharge be rescinded.

The Blooming Prairie school board subsequently voted unanimously to discharge relator. Respondent school district issued its order on December 8, 1986 and concluded:

> Shelton's conduct in stealing a substantial sum of money to wit in excess of $35,000 over a period in excess of two years from a corporation of which he and two other teachers in the Blooming Prairie system were the owners, which conduct included forgery of the other two teachers' signatures to guarantees and nonpayment of corporate taxes timely both of which facilitated his theft is conduct that is not remediable and resulted in an irremediable deterioration of faculty relations, inability to effectively teach because of lack of credibility and adverse relationship with the community. Shelton's conduct can only be remedied by his

> removal as a teacher in the Blooming Prairie Schools.

> \* \* \* \* \* \*

> Shelton's commission of the theft by swindle directly relates to his position as a teacher in the Blooming Prairie School system because it involved two other teachers in the system and their children, some of which were students in the school.

> Shelton's commission of the theft by swindle and related acts including forgery of two other teachers' names and failure to timely pay corporate taxes which were his responsibility relate directly to his fitness and ability to teach social studies 7 through 12 in the Blooming Prairie School District.

> Sufficient time has not elapsed to demonstrate Shelton's rehabilitation in that it has been only a few months since his incarceration and plea of guilty to theft by swindle. Further, *no evidence* was presented to show any mitigating circumstances for commission of the theft by swindle. The theft was of a substantial amount taken over a period of time in excess of two years, while both Shelton and his wife were working and earning a substantial income. He was of such age, education and experience to totally understand the significance and implications of what he did.

> Shelton has not shown evidence of sufficient rehabilitation and present fitness to perform his duties as a teacher in the Blooming Prairie School District as required by MSA 364.03, subd. 3.

Appeal is made by writ of certiorari from the December 8 school district order.

### ISSUES

1. Was relator properly discharged pursuant to Minn.Stat. § 125.12, subd. 8 (1986)?

2. Did relator's discharge violate Minn. Stat. § 364.03 (1986)?

### ANALYSIS

1. A school board's decision to terminate a teacher will be set aside only if

the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law. *Kroll v. Independent School District No. 593,* 304 N.W.2d 338, 342 (Minn.1981) (quoting *Liffrig v. Independent School District No. 442,* 292 N.W.2d 726, 729 (Minn. 1980)). The reviewing court is not at liberty to hear the case de novo and substitute its findings for those of the school board. *Kroll,* 304 N.W.2d at 342 (citations· omitted).

*Beranek v. Joint Independent School District No. 287,* 395 N.W.2d 123, 126 (Minn. Ct.App.1986), *pet for rev. denied* (Minn. Dec. 23, 1986). Here, as in *Beranek,* the school board declined to follow the hearing examiner's recommendation.

Neither Minn.Stat. § 125.12 nor any other law requires school boards to follow a hearing officer's decision. School boards must hire hearing officers, and hearing officers must make findings and conclusions that are available for the school board to consider when the school board reaches its decision. *Schmidt v. Independent School District No. 1,* 349 N.W.2d 563 (Minn.Ct.App.1984). But it is the school board, not the hearing officer, that is charged with reaching the decision following the hearing. Minn. Stat. § 125.12, subds. 4, 10. The law does not require a school board to follow the recommended decision of the hearing officer. Therefore, although the school board chose not to follow the decision of the hearing officer following [the teacher's] hearing, when doing so the school board did not fail to follow the requirements of law. It was within its discretion to reach a different decision, subject to [the teacher's] right to obtain judicial review.

*Freier v. Independent School District No. 197,* 356 N.W.2d 724, 731–32 (Minn.Ct.App. 1984) (footnote omitted).

█ A school board may not reject summarily, however, a hearing examiner's findings and recommendation. The board's reasons for deviation must be explained on the record. *Beste v. Independent School District No. 697,* 398 N.W.2d 58, 63 (Minn. Ct.App.1986). Here, the school district's order is accompanied by 37 findings and 14 conclusions and is over 20 pages in length.

The complete school board was in attendance for most of the two-day hearing before the examiner. Its opportunity to judge the credibility of the 37 witnesses that appeared must be granted substantial deference. *See Downie v. Independent School District No. 141,* 367 N.W.2d 913, 916 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. July 26, 1985).

2. A school district may immediately discharge a teacher for immoral conduct or conduct unbecoming a teacher pursuant to Minn.Stat. § 125.12, subd. 8 (1986). The district may also order a continuing teacher's contract terminated for "[c]onduct unbecoming a teacher which materially impairs his educational effectiveness" pursuant to Minn.Stat. § 125.12, subd. 6. Under that subdivision, the teacher is given an opportunity to correct his conduct prior to being discharged. In applying subdivision 8, the school district must determine the teacher's misconduct is irremediable. *See generally* Popovich, Niles & Miller, *Recent Developments in Minnesota Education Law,* 13 Wm. Mitchell L.Rev. 1, 43–47 (1987).

█ The Minnesota Supreme Court has established several factors to be assessed in determining whether a teacher's conduct is remediable. *See Kroll v. Independent School District No. 593,* 304 N.W.2d 338, 345 (Minn.1981). First, the teacher's prior record must be considered. The school board's finding that prior to his theft relator "had a satisfactory teaching record" and "was a cooperative teacher and coach" is undisputed. He was never before charged with a crime and his prior record is one of fitness.

Second, the district must consider whether the teacher's one behavioral incident is sufficient to warrant immediate discharge. Under the remediability standard, school boards may determine when a single act is so outrageous that it cannot be remedied in light of the danger the teacher's

presence in the classroom would present. However, a single incident of sufficient severity may only justify dismissal in light of the teacher's record as a whole. *Id.* at 346.

Relator claims outrageousness requires a clear showing of a direct relationship between his conduct and his fitness to teach. Respondent argues relator's fitness was directly affected because relator teaches in the area of business ethics and social studies. It asserts relator has lost his credibility to teach such values and that deficiency results in danger from his classroom presence.

Relator insists he has not lost his credibility. He cites the testimony of students who welcomed his return from surgery in March 1986 and were respectful of his ability to face his mistakes. There was disagreement among the students regarding his fitness to teach.

Third, the district must assess whether the teacher's conduct resulted in actual or threatened harm.

Actual harm includes both physical and psychological harm. Although school boards should not be required to wait for harm to come to their students before discharging a teacher, the absence of harm is one fact that should be considered in determining whether conduct is remediable.

*Id.*

While the hearing examiner specifically concluded no harm had been done or might reasonably be done to students, the school district's conclusions are silent other than reviewing the students' misbehavior. The district did make specific findings regarding the harm caused the faculty as a result of the incident and the lack of staff tension in fall 1986 when relator was no longer teaching.

The record demonstrates a strongly emotional 1985–86 school year for the faculty. Relator asserts this dissension was a result of incitement by Wead, Vorlicek and Felchle. Relator never discussed the issue at school nor encouraged others to take sides. He argues he cannot be held responsible for others' provocations.

Respondent argues the record demonstrates "actual harm inflicted upon the integrity of educational process at the Blooming Prairie Public High School." It insists relator's return would only fuel the hard feelings that developed between faculty members and would cause other faculty members to leave the district. The school district concluded relator's misconduct "resulted in an irremediable deterioration of faculty relations" and that relator's discharge was necessary to heal the faculty's working relationships. While the school district found some staff members felt the tension affected the teachers' performance, no finding states that result did actually occur. The school board did conclude relator's return would "ultimately affect the quality of teaching of the students."

■ Given the standard of review applicable, we cannot conclude the school board improperly discharged relator. While relator may be genuinely sorry for, and may be unlikely to repeat, his conduct, the record does support the school board's conclusion that relator's continued presence in this small school district will result in faculty disorder and an unsatisfactory learning environment.

Relator still has his teaching license and can continue in his profession. Faculty members testified relator is well qualified to teach in any other district. Had this matter arisen in a larger school district, it is likely reassignment of relator to another school within the district would suffice as a remedy. But given the small size of the Blooming Prairie school district and the high school which houses grades 7–12, it is not error to conclude relator's "conduct can only be remedied by his removal as a teacher in the Blooming Prairie Schools."

3. Relator claims respondent violated Minn.Stat. § 364.03 (1986), the criminal offenders rehabilitation statute, by discharging relator.

Notwithstanding any other provision of law to the contrary, no person shall be disqualified from public employment, nor shall a person be disqualified from pursuing, practicing, or engaging in any oc-

cupation for which a license is required solely or in part because of a prior conviction of a crime or crimes, unless the crime or crimes for which convicted directly relate to the position of employment sought or the occupation for which the license is sought.

Minn.Stat. § 364.03, subd. 1 (1986); *id.* § 364.07 (statute applies to employment termination). The discharge order expressly concludes relator's commission of a theft by swindle was the basis of his immoral and unbecoming conduct that required his discharge. We focus on whether relator's crime is directly related to his teaching position.[1]

The statutory factors for determining directness are:

(a) The nature and seriousness of the crime or crimes for which the individual was convicted;

(b) The relationship of the crime or crimes to the purposes of regulating the position of public employment sought or the occupation for which the license is sought;

(c) The relationship of the crime or crimes to the ability, capacity, and fitness required to perform the duties and discharge the responsibilities of the position of employment or occupation.

Minn.Stat. § 364.03, subd. 2.

▪ Relator's crime involving embezzlement from his co-workers of several thousand dollars over a period of years was of a serious nature. The crime has affected relator's fitness to teach in the Blooming Prairie school district because of the irremediable nature of his conduct. We agree relator's crime directly relates to his position as a teacher.

Relator claims the school district erred in its application of Minn.Stat. § 364.03, subd. 3:

A person who has been convicted of a crime or crimes which directly relate to the public employment sought or to the occupation for which a license is sought

shall not be disqualified from the employment or occupation if the person can show competent evidence of sufficient rehabilitation and present fitness to perform the duties of the public employment sought or the occupation for which the license is sought.

*Id.* A public employee may demonstrate sufficient rehabilitation if one year has elapsed since release from incarceration without subsequent conviction of another crime. Minn.Stat. § 364.03, subd. 3(b). One year had not elapsed by the time of relator's discharge hearing.

The statute provides other evidence may be offered, but no evidence was offered to demonstrate mitigating circumstances or sufficient proof of rehabilitation as required by the statute.

### DECISION

Respondent school district did not improperly discharge relator. Relator's discharge did not violate Minn.Stat. § 364.03 (1986).

Affirmed.

---

1. Relator claims the school board failed to apply subdivisions 1 and 2 of Minn.Stat. § 364.03 regarding the direct relationship. While the discharge order does not specifically cite those subdivisions, the school board did expressly conclude relator's theft by swindle relates directly to his fitness and ability to teach social studies.