529 N.W.2d 382 (1995)
In the Matter of the Teaching License of Jon A. FALGREN, Relator,
v.
STATE of Minnesota, BOARD OF TEACHING, Respondents.
No. CX-94-1876.
Court of Appeals of Minnesota.
March 21, 1995.
Review Granted May 31, 1995.
*383 Harley M. Ogata, Minnesota Education Ass'n, St. Paul, for relator.
Hubert H. Humphrey, III, Atty. Gen., Nancy J. Joyer, Asst. Atty. Gen., St. Paul, for respondent.
Considered and decided by PARKER, P.J., and NORTON and SCHUMACHER, JJ.

OPINION
NORTON, Judge.
On writ of certiorari, Jon A. Falgren challenges the Minnesota Board of Teaching's decision to suspend his license. In particular, Falgren argues that the Board impermissibly applied collateral estoppel to deny him his right to a hearing under the Due Process Clauses of the Minnesota and United States Constitutions. We agree and reverse.

FACTS
Jon Falgren held Minnesota teaching licenses in Science and Counseling. From 1977-1992, Falgren was employed by Independent School District No. 492, Austin, Minnesota. In 1991, the school district suspended Falgren with pay after allegations surfaced that Falgren had engaged in non-consensual sexual contact with a student.
In November of 1991, Falgren chose to have his discharge case heard before a neutral arbitrator pursuant to Minn.Stat. § 125.12, subd. 9a (1992). After a four-day hearing, the arbitrator found against Falgren and concluded that Falgren engaged in "conduct unbecoming a person who occupied a very influential and sensitive position of trust within the school system." Based upon the arbitrator's decision, the Austin School District discharged Falgren in July of 1992.
The Minnesota Board of Teaching (the Board) then conducted an investigation of Falgren. The Board determined that Falgren's conduct was immoral and, therefore, in violation of Minn.Stat. § 125.09, subd. 1(1) (1992). The parties attended a contested hearing before an administrative law judge (ALJ) to determine whether Falgren's actions justified revocation of his teaching licenses. The Board moved for summary disposition based upon the earlier findings of the arbitrator. The ALJ granted the Board's motion and Falgren appeals.

ISSUE
Did the ALJ violate Falgren's due process rights when it decided this case summarily and without a hearing, based upon collateral estoppel?

ANALYSIS

I.
In general, "decisions of administrative agencies enjoy a presumption of correctness." Reserve Mining Co. v. Herbst, 256 N.W.2d 808, 824 (Minn.1977). Nonetheless, in considering questions of law, "reviewing courts are not bound by the decision of the agency and need not defer to the agency expertise." St. Otto's Home v. Minnesota Dep't of Human Servs., 437 N.W.2d 35, 39-40 (Minn.1989). In this case, because the sole issue is whether the administrative law judge (ALJ) properly applied the doctrine of collateral estoppel, this court need not defer to the ALJ's ruling. See In re Trusts Created by Hormel, 504 N.W.2d 505, 509 (Minn. App.1993) ("Whether collateral estoppel is available is a mixed question of law and fact subject to de novo review"), pet. for rev. denied (Minn. Oct. 19, 1993).
The Minnesota Supreme Court has held that "res judicata will apply to administrative decisions where the agency acts in a judicial or quasi-judicial capacity." McKee v. County of Ramsey, 310 Minn. 192, 194 n. 1, 245 N.W.2d 460, 462 n. 1 (1976). In order for a court to apply the doctrine of collateral estoppel to a case involving an administrative decision, the party seeking issue preclusion *384 must demonstrate that the issue meets the following five-part test:
1) the issue to be precluded must be identical to the issue raised in the prior agency adjudication,
2) the issue must have been necessary to the agency adjudication and properly before the agency,
3) the agency determination must be a final adjudication subject to judicial review,
4) the estopped party was a party or in privity with a party to the prior agency determination, and
5) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.
Graham v. Special Sch. Dist. No. 1, 472 N.W.2d 114, 116 (Minn.1991) (citations omitted). Falgren claims the ALJ erred in applying collateral estoppel here because the arbitration decision was not subject to judicial review. Falgren also argues that application of collateral estoppel to preclude the hearing on his license revocation violated his right to due process.
In considering Falgren's argument, the ALJ in this case agreed that any review of the arbitrator's decision would have been limited. Nonetheless, citing the Minnesota Supreme Court's decision in Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648, 653-54 (Minn.1990), the ALJ applied the doctrine of collateral estoppel because Falgren's "choice of arbitration constitutes a voluntary limiting of the review available." We disagree with the ALJ for three reasons.
First, as Falgren argues, reviewing courts are extremely hesitant to overrule an arbitrator's decision. The Minnesota Supreme Court has noted:
The proper role of judicial review in arbitration cases is solely to determine whether specific language in the agreement or submission precludes the arbitrator from deciding the case as he [or she] did.
City of Bloomington v. Local 2828, 290 N.W.2d 598, 602 (Minn.1980). Similarly, the supreme court has held that arbitrators' decisions
may be impeached only if it appears that their conclusions, and the inferences upon which they are based, are so at variance with any conclusions which might legitimately be drawn from the evidence before them * * * as to imply bad faith or a failure to exercise an honest judgment.
Cournoyer v. American Television & Radio Co., 249 Minn. 577, 580-81, 83 N.W.2d 409, 412 (1957). Therefore, the functional futility in seeking reversal of an arbitrator's decision lends credence to Falgren's argument that the arbitrator's decision is not subject to judicial review.
Second, Aufderhar is distinguishable. While the Aufderhar court did note that "a party who has submitted an issue to arbitration may not later claim the right to a trial on the same issue against the same party," Aufderhar in no way precludes Falgren from using the limitations of the arbitration determination as ammunition in a subsequent case involving a different party. Aufderhar, 452 N.W.2d at 653-54 (emphasis added). Moreover, the logic of the ALJ's reasoning necessarily places the teacher against whom discharge is sought in a veritable Hobson's choice. A teacher accused of wrongdoing must choose between having his or her case heard before: (1) the very school board that seeks the teacher's discharge and which is particularly susceptible to local politics and sentiment; or (2) a neutral arbitrator whose decision, for all practical purposes, is not subject to review, and the choice of who can be used against the teacher in a later proceeding involving a different accuser. Cf. United States v. Hale, 422 U.S. 171, 182-83, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99 (1975) (White, J., concurring) (describing the dilemma in which a person who has invoked his or her rights per Miranda is placed if the prosecution calls attention to the person's silence at the time of arrest).
Finally, we consider the ALJ's application of offensive collateral estoppel to be unfair and a violation of Falgren's due process rights. In Aufderhar, the supreme court specifically noted that Minnesota law allows collateral estoppel if "the party sought to be estopped was the claimant on the issue in both proceedings." Aufderhar, 452 N.W.2d at 652 (emphasis added; footnote omitted). The Aufderhar court then specifically labelled *385 the case as one involving defensive collateral estoppel. See id. n. 2 ("Respondents seek to invoke the estoppel as a defense on the issue. This is, of course, traditional `defensive collateral estoppel' and is favored in the law"). In this case, however, the Board seeks to invoke collateral estoppel offensively against Falgren  the respondent in the proceedings. See id. n. 2 ("An offensive estoppel is one where the plaintiff seeking to invoke [collateral estoppel] uses it to establish an issue in the second action on which it has the burden of proof").
In general, courts allow the use of offensive collateral estoppel only if: (1) the party seeking to use collateral estoppel offensively would have experienced difficulty in joining the earlier action; and (2) application of collateral estoppel would not be unfair to the defendant. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 651-52, 58 L.Ed.2d 552 (1979), cited with approval in Kaiser v. Northern States Power Co., 353 N.W.2d 899, 907 (Minn.1984). In this case, the Board could not have been a party to the arbitration action.
[U]nfairness may result if the second proceeding was not foreseeable, if the judgment relied on is inconsistent with previous judgments in favor of defendant, or if different procedures apply in the subsequent action.
In re Discipline of Morris, 408 N.W.2d 859, 863 (Minn.1987). Falgren claims that the offensive application of collateral estoppel in this case was unfair because it deprived him of his property (his teaching licenses) without a hearing. We agree.
In order to have a property interest in a license, state law must "engender[] a clear expectation of continued enjoyment of a license absent proof of culpable conduct." Barry v. Barchi, 443 U.S. 55, 64 n. 11, 99 S.Ct. 2642, 2649 n. 11, 61 L.Ed.2d 365 (1979). Minnesota law allows the board of teaching or state board of education to suspend or revoke a teacher's license to teach only upon charges of (1) immoral character or conduct; (2) failure, without just cause, to teach for the term of the teacher's contract; (3) gross inefficiency or willful neglect of duty; (4) failure to meet licensure requirements; or (5) using fraud or misrepresentation to obtain the license. Minn.Stat. § 125.09, subd. 1 (1992). Because a teaching license "may not be revoked or suspended at the discretion of the [education] authorities," Falgren has "a property interest in his license sufficient to invoke the protection of the Due Process Clause." Barry, 443 U.S. at 64 & n. 11, 99 S.Ct. at 2649 & n. 11. In other words, Falgren "has asserted a legitimate `claim of entitlement * * * that he may invoke at a hearing.'" Id. at n. 11, 99 S.Ct. at 2649 n. 11 (quoting Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972)). As such, notions of fairness inherent in the due process clause require that Falgren receive a hearing before the Board can deprive him of his teaching licenses. See Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (holding that a hearing is required before an individual can be finally deprived of a property interest).
Minn.Stat. § 214.10, subd. 9(b) (1992) further supports our decision that the offensive application of collateral estoppel in this case would be unfair. Minn.Stat. § 214.10, subd. 9(b) provides:
In any license revocation proceeding, there is a rebuttable presumption that a licensed person who is convicted in a court of competent jurisdiction of committing a crime against a minor is unfit to practice the profession or occupation for which that person is licensed.
Thus, under that statute, a person convicted of committing a crime against a minor is at least afforded the chance to rebut the presumption that he or she is unfit. Such protection, however, was not afforded Falgren, even though he has never been convicted of such a crime.
The Board seeks to distinguish section 214.10, subdivision 9(b) on two grounds. First, the Board argues that the statute only applies to the permanent revocation of a license; a situation not present in this case because Falgren can reapply for his licenses. The Board's argument, however, appears to make a distinction without a difference. See American Fed'n of State, County, & Mun. *386 Employees Council No. 65 v. Blue Earth County, 389 N.W.2d 244, 248-49 (Minn.App. 1986) (holding that for due process purposes a temporary suspension is analogous to discharge), pet. for rev. denied (Minn, Aug. 20, 1986).
The Board also argues that evidence of being unfit to teach, the presumption of which is created if a person is convicted of an offense against a minor, is not a factor considered in license revocation proceedings. See Minn.Stat. § 125.09, subd. 1 (listing five grounds for revocation). The Board, however, has misinterpreted the relevant statutes. Minn.Stat. § 214.10, subd. 9(a)(1), explicitly includes within the definition of "licensed person" any "person who is licensed under this chapter by * * * the board of teaching." Therefore, the plain language of the statute shows the legislature clearly intended for section 214.10, subdivision 9(b), which creates a presumption of being unfit to practice, to apply to teachers. Section 125.09, subdivision 1, does not explicitly refer to a teacher's fitness to practice. Even if we viewed that absence of reference to "fitness to practice" as incongruous to section 214.10, we believe the two statutes, when read in conjunction, demonstrate that being "unfit" to teach is the conclusion raised by a finding of any of the five grounds for revocation enumerated in Minn.Stat. § 125.09, subd. 1. See Nelson's Office Supply Stores v. Commissioner of Revenue, 508 N.W.2d 776, 778 (Minn.1993) (noting that when construing statutes, courts must first discern the legislative intent and then "adopt the most logical and practical definition"); see also Hahn v. City of Ortonville, 238 Minn. 428, 436, 57 N.W.2d 254, 261 (1953) (holding that a reviewing court must consider contemporaneous statutes relating to the same subject matter in order to clarify a statute's legislative intent).
As a final argument, the Board asserts that Falgren is not entitled to a hearing because his license will be revoked regardless of whether a hearing is in fact held. The Board's argument, however, neglects the constitutional requirement of procedural due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 & n. 8, 105 S.Ct. 1487, 1494 & n. 8, 84 L.Ed.2d 494 (1985) ("Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect. * * * The point is that where there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one"); Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (holding that a right to a hearing does not depend on proof of success). The offensive application of collateral estoppel in this case is inimical to notions of procedural fairness inherent in Falgren's constitutional right to a hearing.
Although we hold that Falgren is entitled to a hearing on revocation, we note that the parties need not relitigate the issue already decided at the four day arbitration hearing. Instead, we hold that on remand, the ALJ should admit the transcript of the arbitration hearing into evidence. See In re Discipline of Morris, 408 N.W.2d at 863 (holding that although offensive collateral estoppel did not apply, a transcript of the former hearing was admissible at the later hearing so long as the defendant was allowed to supplement the record). Falgren may supplement the evidence offered in the transcript, but any testimony offered should not duplicate the record. Id.

DECISION
The administrative law judge erred in allowing the offensive application of collateral estoppel in this case. In remanding, however, we hold that the administrative law judge may admit the transcript of the earlier arbitration hearing into evidence so long as Falgren has the opportunity to supplement the record.
Reversed and remanded.