In the Matter of the Teaching License
of Jon A. FALGREN, Relator,

v.

STATE of Minnesota, BOARD OF
TEACHING, Respondent.

No. CX–94–1876.

Supreme Court of Minnesota.

April 5, 1996.

Harley M. Ogata, Minnesota Educ. Ass'n, St. Paul, MN, for appellant.

Nancy J. Joyer, Attorney General's Office, St. Paul, MN, for respondent.

## OPINION

TOMLJANOVICH, Justice.

On November 4, 1991, Independent School District No. 492 (the District) proposed the discharge of one of its teachers, respondent Jon A. Falgren, for allegedly engaging in nonconsensual sexual contact with a student. Falgren contested this action. Under Minn. Stat. § 125.12, subd. 9a (1990), Falgren elected to have his contested discharge proceeding heard by an arbitrator rather than by the school board. On July 9, 1992, the arbitrator found that it was more probable than not that Falgren had engaged in immoral conduct. Subsequently, the District terminated Falgren from his teaching position.

Following Falgren's termination, the Board of Teaching (the Board) commenced a license disciplinary action in the Office of Administrative Hearings, alleging Falgren had engaged in immoral conduct. The Board moved for summary disposition on the ground that collateral estoppel prohibited Falgren from denying the facts that had been proven in the termination hearing, including the fact that Falgren had engaged in nonconsensual sexual conduct. On May 25, 1994, the administrative law judge (ALJ) granted the Board's motion and recommended Falgren's teaching licenses [1] be revoked. On July 20, 1994, the Board, adopting the ALJ's findings of fact, conclusions of law and recommendations, determined that

Falgren had engaged in immoral conduct, and revoked his teaching licenses.

Falgren appealed the Board's revocation to the Minnesota Court of Appeals. The court of appeals reversed the Board and remanded the case to the ALJ. *Falgren v. Board of Teaching,* 529 N.W.2d 382 (Minn. App.1995). The Board appeals this decision. It should be noted at the outset that on June 27, 1995, respondent Falgren died. However, this court has retained jurisdiction of Falgren's case because it involves an issue of public concern that is capable of repetition, yet may evade review. *See State v. Rud,* 359 N.W.2d 573, 576 (Minn.1984).

The revocation of Falgren's licenses stems from his interaction with I.B., a student Falgren had counseled for about four and a half years. A complaint was filed with the District in late July or early August of 1991, shortly after I.B.'s graduation, concerning alleged nonconsensual sexual contact between Falgren and I.B. The contact was alleged to have occurred on July 23, 1991. On September 4, 1991, the District suspended Falgren with pay and subsequently proposed to terminate Falgren's teaching contract.

The termination proceedings consisted of a full evidentiary hearing before a neutral arbitrator. The hearing lasted four days: February 10 and 11 and March 11 and 12 of 1992. Falgren was represented by counsel. Thirty witnesses were called, sworn, examined and cross-examined. The hearing resulted in a transcript of 841 pages.

At the termination hearing, I.B. and Falgren's testimony concerning what happened on July 23 differed. I.B testified that Falgren phoned I.B. to ask her if she would like to go out to practice driving. After the driving lesson, I.B. claims that Falgren drove her to his home where the two were alone. According to I.B., they wound up in Falgren's bedroom together where Falgren told I.B. that he should not be alone in the house with someone as pretty as she. Later, in the basement of Falgren's home, I.B. claims that

1. Falgren held two Minnesota teaching licenses issued by the Board; one in science and one in secondary guidance and counseling.

Falgren kissed her on the neck. Falgren then drove I.B. to a truck stop where they both had something to eat. From there they drove to I.B.'s residence. I.B. testified that once in her home, Falgren

> made her put her arms around his neck and kissed her a second time. In addition * * * he then touched her breasts with his hands over her clothes. * * * Falgren next took her hand and made her touch his genitals over his clothes. [Falgren also] told her his wife liked it when he touched her 'private parts' with his hands, and that it would be better for her with his mouth on her private parts.

Falgren, on the other hand, claims that I.B.'s mother contacted him to see if he might be interested in giving her daughter a driving lesson. Falgren further asserts that I.B. asked to see his home. Falgren did admit that he told I.B. he should not be alone in his house with "a pretty girl like you"; however, he claims he never went to his bedroom or basement. Falgren further testified that it was I.B. who put her arms around his neck and attempted to hug him in a gesture of gratitude. Falgren claims he never touched I.B.'s breasts or rubbed her hand against his genitals through his pants. He also maintains that he never told I.B. anything about sexual relations between himself and his wife.

The arbitrator apparently found I.B.'s version of the events of July 23, 1991 more credible than Falgren's; he held that the district "ha[d] met their statutorily mandated requirement and that the preponderant evidence supports a finding that it is more probable than not that [Falgren's] conduct on the day in question was immoral and unbecoming a person who occupies a very influential and sensitive position of trust within the school system." The District then terminated Falgren's employment. Falgren did not appeal this decision.

Following Falgren's termination, the Board instituted an action to revoke Falgren's teaching licenses. The parties appeared in a contested hearing before an ALJ. The Board moved for summary disposition asking that Falgren be collaterally estopped from challenging the arbitrator's findings that Falgren committed the acts for which he was terminated. Based upon the arbitrator's award, the ALJ, while noting that the award was not "organized into findings of fact and conclusions," determined that the events of July 23, 1991 took place essentially as I.B. testified they did at the termination hearing. The ALJ thus granted the Board's motion holding that Falgren was collaterally estopped from relitigating the fact determination that he had "engaged in nonconsensual sexual contact with a minor student." The ALJ also held that "[n]onconsensual sexual contact with a minor student establishes a *prima facie* case justifying revocation of a teacher's license. Licensee has not introduced any evidence to rebut that *prima facie* case or to show that any genuine issues of fact remain for hearing."

The Board heard oral arguments by attorneys representing Falgren and the Executive Secretary of the Board. The Board adopted the ALJ's findings of fact and conclusion and revoked Falgren's licenses for a minimum of three years.

Falgren appealed the Board's decision to the court of appeals which found that the termination hearing could not be given preclusive effect. *Falgren v. Board of Teaching,* 529 N.W.2d 382, (Minn.App.1995). The court found that the level of judicial review to which the arbitrator's decision was subject was insufficient for the decision to collaterally estop a later proceeding. *Id.* at 384. The court further found that Falgren's due process rights would be violated by application of collateral estoppel in this situation. *Id.* at 385–86. The Board appeals this decision.

■ In a judicial review of an agency decision, the court may affirm, remand, reverse, or modify the decision of the agency if

> the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion or decisions are:
>
> (a) In violation of constitutional provisions; or
>
> * * *
>
> (c) Made upon unlawful procedure; or
>
> (d) Affected by other error of law * * *.

Minn.Stat. § 14.69 (1994). "Whether collateral estoppel is available is a mixed question of law and fact subject to de novo review." *In Re Trusts Created by Hormel*, 504 N.W.2d 505, 509 (Minn.App.1993), *pet. for rev. denied* (Minn. Oct. 19, 1993).

▮▮▮ Collateral estoppel "precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment." *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn. 1990). However, collateral estoppel is not rigidly applied. *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn.1988). "As a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Id.* at 613–14. In order for a court to apply collateral estoppel to an agency decision, five factors must be met:

1. the issue to be precluded must be identical to the issue raised in the prior agency adjudication;

2. the issue must have been necessary to the agency adjudication and properly before the agency;

3. the agency determination must be a final adjudication subject to judicial review;

4. the estopped party was a party or in privity with a party to the prior agency determination;

5. the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Graham v. Special School Dist. No. 1*, 472 N.W.2d 114, 116 (Minn.1991) (citations omitted). The parties do not dispute that elements two, four, and five have been met. However, Falgren claims that neither element one nor element three have been met.

▮▮▮ Falgren first argues that the issue sought to be precluded by collateral estoppel in his license revocation hearing is different from that which was argued in his discharge proceeding. Falgren was terminated for engaging in immoral conduct under Minn.Stat. § 125.12, subd. 8(a) (1992). The Board revoked Falgren's licenses for engaging in immoral conduct under Minn.Stat. § 125.09,

subd. 1(1) (1994). Both of these findings were based on the factual finding that Falgren engaged in nonconsensual sexual contact with I.B. It is this issue that the ALJ precluded. In his recommendation, the ALJ stated that "[w]hile the ultimate issues in the discharge arbitration and this matter are different, one issue is identical. That issue is whether the alleged conduct occurred. That issue was necessary to the arbitrator's decision and is necessary to a decision in this matter." We agree, in the narrowest sense, the issue sought to be precluded in the agency hearing is identical to the issue decided in the termination proceeding, namely, whether the nonconsensual sexual contact with I.B. took place. Thus, we find that, with respect to this issue, the first element of the *Graham* test is met.

Regarding the third element of the test, the court of appeals held, and Falgren argues, that collateral estoppel could not be applied in the present case, partially because judicial review of the arbitrator's decision was too narrow to meet the requirements of *Graham*. The Board argues that the court of appeals' holding is erroneous. It first points out that the arbitrator's decision is subject to judicial review. Under Minn.Stat. § 572.19, subd.1 (1994), in pertinent part, a court shall vacate an arbitrator's award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 572.12, as to prejudice substantially the rights of a party; * * *.

Thus, while judicial review is limited, it is available.

■ The Board claims that for two reasons, this level of review meets the requirements of *Graham.* First, it ensures the fairness of the discharge hearing. Second, the Board argues that Falgren voluntarily waived his right to a different level of judicial review by choosing to have his discharge heard before an arbitrator. In *Schmidt v. Independent School District No. 1,* 349 N.W.2d 563, 566 (Minn.App.1984), the court of appeals held that discharge hearings before the school board

> will be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law.

As this standard provides for some review of the substance of the decision, it is slightly broader than the review afforded an arbitrator's decision. Further, under Minn.Stat. § 125.12, subd. 9 and 9a, Falgren had a choice whether to contest his discharge in a hearing before the school board or before an arbitrator. Falgren chose a hearing before an arbitrator. Thus, we agree with the Board; by choosing to have his discharge heard before an arbitrator, Falgren waived his rights to broader judicial review. Along with whatever benefits Falgren felt his decision to have his termination hearing before an arbitrator offered, he must also accept the drawbacks.

The court of appeals, however, called Falgren's decision a "veritable Hobson's choice." *Falgren,* 529 N.W.2d at 384. The court points out that if Falgren had not chosen to have his termination hearing before an arbitrator, his termination would have been heard "before the very school board that seeks the teacher's discharge and which is particularly susceptible to local politics and sentiment * * * ." *Id.* We disagree. As the Board points out, the court of appeals ignored the fact that *Schmidt* "strongly recommends" school boards to use independent hearing examiners, *id.* at 567, and that termination hearings are subject to judicial review. Thus, Falgren's decision was not such a "Hobson's choice." We find that there was sufficient judicial review of the arbitrator's decision to meet the third element of the *Graham* test.

■ Falgren next argues that application of offensive collateral estoppel in this case is unfair. A plaintiff uses offensive collateral estoppel when he or she "seek[s] to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). "Offensive collateral estoppel is likely to increase the total amount of litigation and may be unfair to the defendant." *In re Morris,* 408 N.W.2d at 859, 862 (Minn.1987). *Morris* lists three factors which may result in such unfairness: "if the second proceeding was not foreseeable; if the judgment relied on is inconsistent with previous judgments in favor of defendant, or if different procedures apply in the subsequent action." *Id.* at 863.

First, Falgren was terminated for immoral conduct under section 125.12, subd. 8(a). Given that his teaching licenses could be revoked for precisely that same reason under section 125.09, subd. 1(1), and that Minn.Stat. § 125.09, subd. 4 (1994) requires the school district to report proposed teacher termination for immoral conduct to the Board, the revocation proceeding was certainly foreseeable. Second, there are no judgments previous to the termination hearing with which the award could be inconsistent.

Third, without engaging in an exhaustive comparison, Minn. R. 1400.6500—1400.8500 would appear to require an administrative, contested case hearing to adhere to more formal, "court-like" rules of procedure than those to which Minnesota Statutes chapter 572, the Uniform Arbitration Act, would require an arbitration to adhere. For example, in an administrative hearing, "[a]ny means of discovery available pursuant to the Rules of Civil Procedure for the District Court of Minnesota is allowed." Minn. R. 1400.6700. Further, in the administrative hearing, parties must adhere to specific, albeit brief, rules of evidence. *See* Minn. R. 1400.7300. Chapter 572 lists no requirements concerning admissible evidence. Also, the scope of agency rehearing is broader than that afforded an arbitration. *Compare* Minn.Stat.

§ 572.16, subd. 1 (barring, effectively, any review of the arbitrator's findings of fact) *with* Minn. R. 1400.8300 (allowing rehearing if "the decision was not justified by the evidence").

Nonetheless, with respect to the termination hearing in question, the parties could take depositions and have the arbitrator issue subpoenas; the witnesses were sworn and subject to cross-examination; the parties were represented by attorneys; and a full transcript of the four-day proceeding was produced. Additionally, Falgren points to no specific procedural right which the license revocation proceeding could have afforded him which made the application of collateral estoppel in this case unfair. Thus, as far as consideration of the above three factors, offensive application of collateral estoppel produces no unfairness to Falgren.

In *Parklane Hosiery*, the Court lists a fourth reason, not noted in *Morris*, why application of offensive collateral estoppel might be unfair to a defendant. The Court points out that "in cases where a plaintiff could easily have joined in the earlier action * * * the use of offensive collateral estoppel" should not be allowed. *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651. In this case, however, the parties to the termination hearing were statutorily mandated. *See* Minn. Stat. § 125.12, subd. 9a. Thus, the Board could not have joined as a party.

*Parklane Hosiery* also notes that the application of offensive collateral estoppel may be unfair to a defendant for reasons other than those discussed above. *Id.* at 331, 99 S.Ct. at 651–52. The court of appeals decided, and Falgren argues, that the wording of Minn.Stat. § 214.10, subd. 9(b) (1994) makes application of collateral estoppel unfair in this situation.

Section 214.10, subd. 9(b) states:

In any license revocation proceeding, there is a rebuttable presumption that a licensed person who is convicted in a court of competent jurisdiction of committing a crime against a minor is unfit to practice the profession or occupation for which that person is licensed.

The reasoning is that if Falgren had been convicted of criminal charges, section 214.10, subd. 9(b) would allow him to present evidence to rebut a presumption that he is unfit to teach. However, in the current situation, though he was not convicted of a crime, he is afforded no such opportunity.

There are two flaws with this argument. First, as the Board points out, it is not proceeding under this section. Rather, it is proceeding under section 125.09, subd. 1(1). Thus, section 214.10, subd. 9(b) does not apply.

Second, if there is a conflict between two laws where one is a special provision and the other a general provision, "the special provision shall prevail and shall be construed as an exception to the general provision * * *". Minn.Stat. § 645.26, subd. 1 (1994). Section 214.10, subd. 9(b) refers generally to any license revocation proceeding. Section 125.09, subd. 1(1), on the other hand, refers specifically to revocation of teaching licenses. Thus, under section 645.26, subd. 1, section 125.09, subd. 1(1) prevails. We find no unfairness in the application of offensive collateral estoppel in the present case.

Falgren, however, argues that to give collateral estoppel effect to the termination hearing in this case would run counter U.S. Supreme Court decisions in *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In all three cases, the Supreme Court refused to afford preclusive effect to an arbitration award in a later federal district court statutory action. However, each case is distinguishable from the present situation for at least two reasons. First, in each case, one of the reasons the Court refused to give preclusive effect to the arbitration in question was that the arbitrator had decided the issue based on criteria laid out in the union contract. *McDonald*, 466 U.S. at 290–91, 104 S.Ct. at 1803–04; *Barrentine*, 450 U.S. at 744, 101 S.Ct. at 1446–47; *Alexander*, 415 U.S. at 53, 94 S.Ct. at 1022. These criteria were not necessarily the same as that

on which the statutory claims should be decided. In the present case, however, the termination hearing before an arbitrator is provided for by statute, not contract. Further, both the arbitrator's decision under section 125.12, subd. 8(a) and the ALJ's recommendation under section 125.09, subd. 1(1) are based upon the same criteria; whether Falgren's behavior was immoral.

Second, in each Supreme Court case, the Court pointed out that the arbitrator was not necessarily an expert in the law that pertained to the statutory action. *McDonald,* 466 U.S. at 290, 104 S.Ct. at 1803; *Barrentine,* 450 U.S. at 743, 101 S.Ct. at 1446; *Alexander,* 415 U.S. at 57, 94 S.Ct. at 1024. In the present case however, the issue that the Board seeks to have precluded is one of fact. Indeed, in *Barrentine,* the Court stated that "an arbitrator may be competent to resolve many preliminary factual questions * * * ." *Id.* at 743, 101 S.Ct. at 1446. Thus, the Supreme Court cases cited by Falgren do little to support his argument. Because the five elements of the *Graham* test were met, and application of offensive collateral estoppel was fair in this case, we hold that the ALJ properly allowed the teacher's termination hearing to preclude the issue whether Falgren engaged in nonconsensual sexual conduct.

■ However, while collateral estoppel may be applicable to the nonconsensual sexual contact issue, this does not mean that the ALJ is precluded from hearing additional evidence concerning Falgren's license revocation. As Falgren points out, discharge from a teaching position in a specific school district is distinct from the loss of a license to teach in any district in the state. This is particularly so when the triggering event for either is as nebulous as engaging in "immoral conduct." Conduct which a particular community might find immoral may not be so labeled in another location in the state. Indeed, in *In re Shelton,* 408 N.W.2d 594 (Minn.App.1987), *pet. for rev. denied* (Minn. Aug. 12, 1987), a school board terminated a teacher for immoral conduct and conduct unbecoming a teacher when he embezzled funds from a corporation he and two other teachers in the district were running. Nonetheless,

the court of appeals noted that "[f]aculty members testified relator is well qualified to teach in any other district." *Id.* at 598.

■ Moreover, section 125.09, subd. 1(1) provides that the Board *may* revoke a teacher's license if the teacher has engaged in immoral conduct; the legislature does not *require* that the teacher's license be revoked based on such a finding. Thus, we hold that even though collateral estoppel may be applied to the issue whether Falgren engaged in nonconsensual sexual contact with I.B., the ALJ must still consider any additional evidence the defendant may wish to present concerning the alleged immorality of his or her conduct and whether the ALJ should recommend revocation based exclusively on immoral conduct.

■ In the present case, Falgren wished to introduce evidence that he had participated in a program dealing with boundary laxness issues. He states that he would have introduced reports of counselors and psychologists that worked with him in that program. This evidence would be relevant to whether the ALJ should recommend revocation based exclusively on immoral conduct. Because Falgren's death moots this issue in his particular case, we need not remand. However, in the usual case, the ALJ would have to have admitted this evidence.

Falgren finally argues that the use of offensive collateral estoppel by the Board in this case denied him his right to procedural due process in his license revocation. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The Board concedes that Falgren's teaching licenses are property within the meaning of the Due Process Clause of the Fourteenth Amendment.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, 96 S.Ct. at 902 (citing *Morrissey v. Brewer,* 408 U.S. 471,

481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Further,

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

First, the private interest that will be affected are Falgren's teaching licenses. These constitute Falgren's ability to make a living in his chosen profession. Of this interest, the U.S. Supreme Court has said: "the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985).

Second, concerning the risk of erroneous deprivation, the Board points out that Falgren submitted a written brief to the ALJ and presented oral argument before the Board. Further, a four day hearing producing over 800 pages of transcript was held concerning the factual issue of whether the conduct in question occurred. Thus, on the issue of whether the conduct actually occurred, we feel there is little risk of erroneous deprivation.

■ Third, the state's interest in this case could be stated as the expeditious barring of contact between a student and a teacher who may be dangerous to the student. The current use of collateral estoppel certainly advances this interest. Thus, we find that with respect to the application of collateral estoppel to the issue of whether Falgren engaged in nonconsensual sexual conduct, Falgren's due process rights were not violated.

Reversed.