*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1735**

In Re the Custody of: D. T. E. B., DOB 10-27-2013,

D'Jilorian D. Baker, petitioner,
Appellant,

vs.

Diona Marie Hargrett,
Respondent.

**Filed December 4, 2023
Affirmed
Ross, Judge**

Olmsted County District Court
File No. 55-FA-16-4021

Thomas R. Braun, Tammy L. Shefelbine, Restovich Braun & Associates, Rochester, Minnesota (for appellant)

Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

In this child-custody dispute between mother and father, mother moved the district court to modify an order governing legal and physical custody of the parties' daughter after the department of human services found that father had sexually abused the girl. The

district court applied the doctrine of collateral estoppel and, relying on the department's abuse finding, granted mother full legal and physical custody. Father appeals from the order modifying custody by challenging the district court's decision to apply collateral estoppel, arguing that the issue decided by the department and the issue to be decided by the district court were not identical. Because the issue decided by the department of human services as to whether father sexually abused the child was identical to the underlying issue before the district court in the custody dispute, the district court had discretion to apply collateral estoppel to preclude the parties from relitigating the issue. We therefore affirm.

**FACTS**

After spending the weekend with her father, D'Jilorian Baker, four-year-old D.T.E.B. returned to the home of her mother, Diona Hargrett, and complained of vaginal pain. The girl told her mother that Baker had touched her vagina. Hargrett asked how, and the girl "physically demonstrated actions that seemed sexual in nature." Hargrett also found discharge in the girl's underwear and suspected that Baker had sexually abused her. Hargrett reported the circumstances to police.

Police investigated and sent the child's underwear to the Minnesota Bureau of Criminal Apprehension to forensically examine the discharge. Testing established that the discharge contained semen and that the semen's DNA profile matched a sample provided by Baker.

Based on the DNA evidence and interviews, Olmsted County Health and Human Services determined that Baker had committed maltreatment by sexually abusing the girl. Baker appealed the determination to the Minnesota Department of Human Services (DHS).

A DHS human-services judge conducted two evidentiary hearings. Baker was present for both and was represented by an attorney. Baker denied sexually abusing the child and attempted to explain the semen evidence by suggesting that his DNA may have transferred to the girl's underwear in the laundry. The human-services judge found that it was more probable than not that Baker sexually abused the girl and recommended that the DHS commissioner adopt the department's findings. The commissioner did so, and Baker did not appeal the decision to the district court.

Hargrett moved to modify the parties' custody agreement in district court, seeking sole physical and sole legal custody of their daughter. Before a hearing on the motion, the district court applied the doctrine of collateral estoppel to bar Baker from contesting the DHS finding and that he had sexually abused the child. The district court ultimately granted Hargrett's motion, awarding her sole custody.

Baker appeals.

## DECISION

Although Baker's brief on appeal included a due-process claim, he waived that claim at oral argument. The sole question remaining is whether the district court properly precluded Baker from arguing that he did not sexually abuse his daughter. We review the district court's determination on the availability of collateral estoppel in a particular case *de novo*. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). If we determine that collateral estoppel is available as a matter of law, whether to apply the doctrine is left to the district court's discretion. *In re Est. of Perrin*, 796 N.W.2d 175, 179 (Minn. App.

3

2011) (quotation omitted), *rev. denied* (Minn. June 28, 2011). For the following reasons, Baker's challenge fails under this standard.

Baker's collateral-estoppel challenge is narrowly focused. Collateral estoppel precludes parties from relitigating an issue that was previously decided. *Tarutis v. Comm'r of Revenue*, 393 N.W.2d 667, 669 (Minn. 1986). The doctrine can apply to administrative decisions if five requirements are met: (1) the precluded issue is identical to the issue previously raised in the administrative proceeding; (2) the issue to be precluded must have been properly before the agency and necessary to the agency decision; (3) the agency decision must have been final and subject to judicial review; (4) the party to be estopped must have been a party or in privity with a party to the previous agency decision; and (5) the party to be estopped must have had a "full and fair opportunity to be heard on the adjudicated issue." *Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114, 116 (Minn. 1991). Baker disputes only the first element, arguing that the abuse issue in this custody proceeding differs from the issue decided by DHS in the maltreatment case.

Our comparison of the issues considered in the different proceedings defeats Baker's contention. We first identify the issue determined in the DHS child-maltreatment proceeding. That proceeding arose from the county's authority to investigate allegations of sexual abuse of a child by family members. Minn. Stat. § 260E.14, subd. 2(a) (2022). Once a county determines that maltreatment occurred, any "interested person on behalf of the child" may appeal the decision to the commissioner of human services. *See* Minn. Stat. § 260E.33, subds. 2(a), 3(a) (2022). In an appeal to the commissioner, the commissioner must determine whether maltreatment occurred by a preponderance of the evidence. Minn.

4

Stat. § 256.045, subd. 3(b) (2022). Maltreatment includes sexual abuse, which, in relevant part, includes any act that constitutes first- through fifth-degree criminal sexual conduct. Minn. Stat. § 260E.03, subds. 12(4), 20 (2022). Part of the DHS maltreatment determination was therefore the issue of whether Baker sexually abused the child.

We next identify the issue in the present case, triggered by Hargrett's motion to modify custody. To modify custody, the district court was required to evaluate various best-interests factors. *See* Minn. Stat. § 518.17, subd. 1(a) (2022). One factor is whether domestic abuse "as defined in section 518B.01" occurred in either parent's household. Minn. Stat. § 518.17, subd. 1(a)(4). Like the definition of sexual abuse that DHS applies, the definition of domestic abuse in a custody dispute includes first- through fifth-degree criminal sexual conduct. *Compare* Minn. Stat. § 518B.01, subd. 2(3) (2022) *with* Minn. Stat. § 260E.03, subd. 20. To evaluate the domestic-abuse best-interests factor in this case, the district court therefore had to determine the same issue decided by DHS—whether Baker had sexually abused the child, meaning he engaged in behavior that falls under first- through fifth-degree criminal sexual conduct.

Baker mainly asserts that the issues are nevertheless not identical because they lead to different consequences. But the supreme court rejected a similar argument in *Falgren v. State, Bd. of Teaching*, 545 N.W.2d 901 (Minn. 1996). In that case, a teacher was terminated from his teaching position after an arbitrator determined that he had sexual contact with a student. *Falgren*, 545 N.W.2d at 903. In the later license-revocation proceeding, the teacher was collaterally estopped from relitigating the sexual-contact issue. *Id.* The supreme court reasoned, "We agree, in the narrowest sense, the issue sought to be

precluded in the agency hearing is identical to the issue decided in the termination proceeding, namely, whether the nonconsensual sexual contact with I.B. took place." *Id.* at 905. The same reasoning fits here, where the district court applied collateral estoppel to the narrow issue of whether Baker sexually abused the child. That the consequence of a sexual-abuse finding in the DHS maltreatment proceeding differs from the consequence of a sexual-abuse finding in the child-custody dispute does not render the issue itself nonidentical or foreclose the district court from applying collateral estoppel. The first element of the test in *Graham* is satisfied, and the doctrine of collateral estoppel was available to the district court here.

Baker contends unconvincingly that the application of collateral estoppel here constituted so-called offensive collateral estoppel, that applying it violates fairness principles, and that, therefore, even if the doctrine was available its application constituted an abuse of discretion. Offensive collateral estoppel occurs when a party seeks to estop her counterpart from relitigating issues that he previously litigated and lost in a separate proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). The supreme court in *In re Morris* listed several factors that may make the application of offensive collateral estoppel unfair to the estopped party. 408 N.W.2d 859, 862–63 (Minn. 1987). Regarding this case, applying the doctrine may be unfair if "different procedures apply in the subsequent action." *Id.* at 863. On that precept, Baker points out that DHS relied on hearsay in making its determination and that Hargrett was not present for cross-examination. But Baker was represented by an attorney and had other tools to defend against the action, including the opportunity to present evidence, provide testimony, and appeal the decision

to the district court. The DHS commissioner was also qualified to determine the credibility of witnesses and weigh evidence. *See State ex rel. Indep. Sch. Dist. No. 276 v. Dep't of Educ.*, 256 N.W.2d 619, 627 (Minn. 1977). We are not persuaded that the procedural differences in the DHS case made it unfair and an abuse of discretion for the district court to apply offensive collateral estoppel in the custody case.

Baker contends finally that the use of offensive collateral estoppel was unfair and therefore improper because the resulting finding essentially terminated his parental rights. We need not address whether his contention has any legal merit, because it is incorrect as a matter of fact. A finding of sexual abuse does not automatically terminate parental rights. *See, e.g.*, *Holmberg v. Holmberg*, 529 N.W.2d 456, 461 (Minn. App. 1995) (affirming a custody award to a father with a history of sexually abusing a child), *rev. denied* (Minn. May 31, 1995). The district court relied on more than the finding of sexual abuse, making its custody determination after considering all the statutorily required best-interests factors. Baker had the opportunity to litigate the other issues bearing on the pending custody decision, and he did so. Neither the use of collateral estoppel nor the finding amounted to, or resulted in, a termination of Baker's parental rights.

In sum, the district court properly determined that collateral estoppel was available. And none of Baker's arguments relating to fairness persuade us that the district court abused its discretion by applying the doctrine as part of its custody decision.

**Affirmed.**